[No. S004154. July 11, 1988.]

GEORGE ALBERT LYDON III, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Ephraim Margolin and Bradford L. Battson for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Donald Steedman for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review the State Bar Court's unanimous recommendation that petitioner George Albert Lydon III be disbarred for failing to comply with rule 955 of the California Rules of Court (hereafter, rule 955).

Petitioner contends that he had no actual notice of the disciplinary charges and order underlying the rule 955 proceedings, and that he has resolved the personal problems which caused his professional misconduct. However, it is clear that every reasonable and necessary step was taken to notify petitioner of all disciplinary activity, and that any notice problem was induced solely by his failure to maintain a current State Bar address. Because his noncompliance with rule 955 was wilful, and little weight can be attached to his claims of "illness" and "rehabilitation," we adopt the recommended discipline.

I

Since petitioner vigorously objects to the notification procedures used at every step in this case, we reluctantly recite the pertinent facts in some detail.

Petitioner was admitted to the bar in 1965. It is undisputed that between July 1978 and November 1987, the State Bar's membership records listed petitioner's address as "Post Office Box 1511, Fort Bragg, California 95437," in Mendocino County (official membership address).

Petitioner's first "formal" discipline was imposed in July 1981, when he was suspended from active membership status for failure to pay his State Bar dues (Bar Misc. 4414). While still under suspension, he continued to practice law on behalf of several unsuspecting clients.

In February 1984, petitioner was charged in a consolidated Notice to Show Cause with client abandonment and related misconduct, including wilfully practicing law while under suspension. Because efforts to personally

serve him with the notice to show cause were fruitless, notice was ultimately ordered published in December 1984.

In declarations supporting the application for publication of notice, two State Bar investigators stated: (1) telephone, attorney directory, and voter registration records in Mendocino County listed either no address for petitioner or his official membership address; (2) the address on his driver's license was several years out-of-date, and the new occupants at that address stated that they thought he was living in the "Albion area" of Mendocino County; (3) although the Mendocino County Sheriff's Office confirmed that petitioner was living in an Albion "commune," efforts to visit him there were unsuccessful; (4) according to the Albion postmaster, any mail addressed to petitioner "care of the Albion Postmaster" would be deposited in a postal box which petitioner had been renting (the Albion address); (5) the notice to show cause was mailed by both first class and certified mail to the Albion address, with only the certified mail being returned as unclaimed; and (6) several miscellaneous leads (e.g., local friends and "hangouts") were not helpful in locating petitioner.

Petitioner did not appear at the disciplinary hearing held on May 21, 1985. In a decision ultimately adopted by the review department, the hearing panel found that between June 1982 and February 1983, petitioner wilfully abandoned three different clients; failed to return a total of $650 in unearned fees to two of them; and intentionally misrepresented the status of a case to one of them. Petitioner was further found to have wilfully practiced law, and held himself out as being entitled to do so, while suspended for nonpayment of State Bar dues. The recommended discipline included, among other things, three years' actual suspension.

On June 5, 1986, we ordered that petitioner be suspended for three years and until he had (1) made restitution totaling $650 to two clients, and (2) paid all State Bar dues and penalties which may be owing. We further ordered that he comply with rule 955 and perform the acts specified in subdivisions (a) and (c) within 30 and 40 days, respectively, of the order's effective date, and pass the Professional Responsibility Examination within one year of that date (Bar Misc. 5141, the 1986 suspension order).

There were dual attempts to serve petitioner with this suspension order. This court immediately mailed a copy of the order to petitioner at his official membership address—from which it was returned as undeliverable—and to the Albion address—from which it was not returned. The State Bar also mailed the order to the same two addresses with the same results,

and to a third address on Petaluma Street in Fort Bragg.[1] This latter mailing was never returned by the post office.

On September 24, 1986, we issued an order stating that petitioner had failed to file the requisite rule 955 subdivision (c) affidavit (attesting to compliance with the notification requirements of subd. (a) and giving a current address). We also ordered the matter referred to the State Bar for a hearing on whether petitioner's noncompliance was wilful and, if so, for a disciplinary recommendation.

As before, there were two sets of notices mailed to petitioner regarding the 955 referral order and hearing. The State Bar examiner sent the notice by certified mail to petitioner's official membership address and to the Albion address. Both of these items were returned as undeliverable. The State Bar Court also sent notices to the same two addresses by first class regular mail, and those items were not returned.

Petitioner did not appear at the rule 955 hearing on May 20, 1987. The State Bar Court concluded that petitioner had indeed failed to comply with rule 955, subdivision (c)'s affidavit requirement and that disbarment was warranted. Although there was no express finding of "wilfulness," the State Bar Court found that a copy of the suspension order was mailed to the official membership address and was returned, and to the Albion address, where it was "received" by petitioner. It further found that notice of the 955 hearing complied with the State Bar's Rules of Procedure (i.e., sent by certified mail to his official membership address), and was also mailed to the Albion address.

On July 29, 1987, we ordered petitioner suspended "pending further order of the court" for failure to pass the Professional Responsibility Examination within the time required by our 1986 suspension order.

## II

 Petitioner's primary complaint is that he did not learn about the disciplinary charges, 1986 suspension order, or rule 955 proceedings until after the fact. He explains that "nervous tension" and "agoraphobic reactions"[2] caused him to withdraw from the practice of law in 1981-1982 and

---

[1] The materials mailed by the State Bar included this court's disciplinary order, a letter from the State Bar probation department outlining the terms of the order, a copy of rule 955, and a copy of the portion of the State Bar Court's decision setting forth the conditions of probation. The Petaluma Street residence was one at which the investigator had attempted to personally serve the notice to show cause but found no trace of petitioner.

[2] In 1974, petitioner apparently underwent cancer surgery, lost his voice, and now speaks with the aid of an electronic device. He practiced law successfully for several years following

adopt an isolated, vagabond lifestyle: he moved frequently without leaving a forwarding address, lived in a commune for two years, rarely ventured into the outside world, and declined to read a newspaper or even open his mail. Not until he sought to reenter the profession in November 1987 did he actually discover that he had been suspended by this court in 1986.

Petitioner mistakenly assumes that actual notice is a necessary element of proper service in disciplinary proceedings. At a minimum, the State Bar may send all notices to show cause and hearing notices by certified mail to the most recent address shown on an attorney's membership records. Such notices are deemed served at the time of mailing regardless of whether they are actually received by the attorney. (Bus. & Prof. Code, § 6002.1, subd. (c); rule 243, Rules Proc. of State Bar.) It is the attorney's obligation to keep the State Bar informed of any address changes. (Bus. & Prof. Code, § 6002.1, subd. (a); rule 201, Rules Proc. of State Bar.)

■ Moreover, "wilfulness" under rule 955 does not require bad faith or actual knowledge of the provision which is violated. (*Hamilton v. State Bar* (1979) 23 Cal.3d 868, 873-874 [153 Cal.Rptr. 602, 591 P.2d 1254].) We recently ordered disbarment of an attorney whose failure to update his official State Bar address prevented him from learning that his probation had been revoked and that he was required to comply with rule 955. (*Powers v. State Bar* (1988) 44 Cal.3d 337, 341-342 [243 Cal.Rptr. 386, 748 P.2d 324].) His noncompliance was deemed wilful, because the State Bar had properly followed all notification procedures, and the attorney had a long history of "complete [professional] indifference." (*Id.* at p. 341.)

■ Here, the State Bar not only met its statutory notice requirements but exceeded them. Personal service and/or certified mail was repeatedly attempted whenever necessary to initiate formal proceedings. The State Bar did not limit itself to using petitioner's official membership address, but diligently sought to discover his true place of residence. In particular, the 1986 suspension order was sent by two separate offices (this court and the State Bar) to a total of three addresses. Needless to say, it is disingenuous for petitioner to demand actual, timely notice of the proceedings when he admittedly tried to insulate himself from the outside world.

Petitioner's response is that, even assuming proper notice, disbarment is too harsh where the primary wrongdoing is merely clerical—failing to update his official State Bar address or file an affidavit. These omissions are supposedly "insubstantial" because no clients were hurt as a result of them.

---

the surgery, and does not blame his professional misconduct directly on these physical problems. Rather, he says he started neglecting his practice in 1981-1982 because he developed an irrational fear of asphyxiation and underwent upsetting marital problems.

He also asks us to reconsider our 1986 suspension order. Although he acknowledges that the underlying client abandonment charges are true, he insists that they are mitigated by his "psychological problems" and subsequent "rehabilitation."

An obvious flaw in this reasoning is that it seeks to minimize petitioner's current wrongdoing. Nothing on the face of rule 955 or in our prior practice distinguishes between "substantial" and "insubstantial" violations of rule 955. ■ In every case, rule 955 performs the critical prophylactic function of ensuring that all concerned parties—including clients, cocounsel, opposing counsel or adverse parties, and any tribunal in which litigation is pending—learn about an attorney's discipline. (*Durbin* v. *State Bar* (1979) 23 Cal.3d 461, 467-468 [152 Cal.Rptr. 749, 590 P.2d 876]; see also, rule 955(a).) It also keeps this court apprised of the location of attorneys who are subject to our disciplinary authority. Thus, a wilful violation of this rule is, by definition, deserving of strong disciplinary measures. (See rule 955(e) [authorizing disbarment, suspension, revocation of pending probation, denial of reinstatement or readmission application, and "punish[ment]" through the exercise of this court's contempt power]; see also *Powers, supra,* 44 Cal.3d at p. 341 ["[E]ven though there were no clients or counsel to notify . . . Powers was still required to file an affidavit with us . . . ."].)

■ Moreover, there are three reasons for declining petitioner's invitation to reexamine the underlying disciplinary order. First, our main concern at this late date in the proceedings is to select the appropriate discipline under rule 955, subdivision (e)—suspension or disbarment. As noted earlier, petitioner was given fair warning of his obligation to comply with the rule, and our 1986 suspension order is now long since final.

■ Second, this court generally "does not consider evidence which was not presented to the State Bar during its review process." (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740].) Such evidence is virtually impossible to evaluate in the absence of cross-examination and, to the extent it consists of opinions about the petitioner's mental attitude, is often based on his own self-serving, out-of-court statements. (See *In re Possino* (1984) 37 Cal.3d 163, 171, fn. omitted [207 Cal.Rptr. 543, 689 P.2d 115].)

Petitioner's few pieces of extrinsic, "mitigating evidence" fall into this suspect category: declarations prepared by petitioner and two long-time personal friends assure us that petitioner has gradually overcome his need for isolation and is now emotionally stable; a 1982 report purportedly prepared by a Veteran's Administration psychiatrist describes petitioner as

possibly "narcissistic" and suffering from "alcohol abuse";[3] and a 1985 letter purportedly prepared by one "Thomas S. Harper M.D." describes petitioner as demonstrating "anxiety" and "hyperventilation" which is "agoraphobic in nature." Since these statements are vague and inherently unreliable under the foregoing test, they are entitled to little evidentiary weight.

■ Third, even if taken fully into account, this evidence would not support a claim of disabling "agoraphobia." We have recognized the "disease" of agoraphobia as a possible mitigating factor in imposing discipline (but not as an "excuse" for misconduct) only under the strictest evidentiary circumstances. (*Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 576-578 [238 Cal.Rptr. 54, 737 P.2d 1338].) In *Frazer*, for example, the attorney's misconduct was found to be mitigated, in part, by the fact that he had introduced substantial credible evidence demonstrating that "at the time of his misconduct he was suffering from significant depression and agoraphobia." (*Id.* at p. 576.) The evidence consisted of testimony by two psychiatrists and a psychologist, as well as a detailed history of petitioner's ongoing antidepressive drug treatment and weekly counseling.

Here, however, petitioner has presented reports of two doctors whose training and experience are unknown. The 1982 report contains no mention of agoraphobia and in fact refrains from making any specific medical or psychological diagnosis whatsoever. The second report, which was made three years later, analogizes petitioner's symptoms to those suffered as a result of agoraphobia, but makes no firm diagnosis in this regard. Clearly, nothing before this court adequately explains petitioner's six-year period of professional neglect, or assuages our concern that it could recur in the future.

Accordingly, it is ordered that petitioner George Albert Lydon III be disbarred from the practice of law and that his name be stricken from the roll of attorneys in this state. It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon finality of this decision.

---

[3] Petitioner does not raise alcohol abuse as a factor in mitigation, nor would the record support such a contention.