[No. S006297. Mar. 2, 1989.]

DANIEL W. BOWLES III, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Robert S. Gerstein and Steiner & Gerstein for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Lawrence C. Yee and H. Franklin Kissane for Respondent.

OPINION

**THE COURT.**—We examine the unanimous recommendation of the Review Department of the State Bar Court (hereafter the department) that petitioner Daniel W. Bowles III be disbarred from the practice of law in California. After considering the record and petitioner's objections, we follow the department's recommendation.

We adopt the department's findings as follows:[1]

Petitioner was admitted to the practice of law in this state on December 21, 1977. He is charged with abandoning clients in six separate matters and having insufficient funds to cover a check drawn on a client trust account.

In the first matter (hereafter the Bossi matter), petitioner was employed by Charlotte Bossi to represent her in a marital dissolution action in February 1984. Bossi paid petitioner $750 as an advance on fees; however, he failed to file a dissolution action on her behalf and, when Bossi's husband filed for dissolution, failed to file a response. On numerous occasions she attempted to contact petitioner by telephone but her calls were not returned. She moved to Wisconsin in June and sometime thereafter received a copy of a request to enter default from her husband's attorney. After leaving several messages at petitioner's girlfriend's residence, she spoke to petitioner and told him she had received a request to enter default. He assured her that the request "was a good thing. He said he wanted to change the venue so that it would be heard in Southern California rather than Northern California."

In December a dissolution judgment was entered but petitioner took no steps to vacate the judgment or otherwise protect Bossi's interest in the dissolution action. She therefore retained an attorney in Wisconsin who wrote a letter to petitioner inquiring about the status of the proceedings. There is no evidence of any response. The attorney arranged for representation of Bossi in the dissolution action by new California counsel who was able to obtain an order vacating the default judgment, negotiate a property settlement, and secure an order for child support. The final judgment was

---

[1] In our discussion we supplement the department's findings with details evident from the record.

entered in December 1985. Petitioner filed no papers in the dissolution action and did not return any portion of the $750 advance paid by Bossi.

In the third matter[2] (hereafter the Dalrymple matter), petitioner was employed by Patricia Dalrymple to represent her in a marital dissolution action in September 1985. With money given to her by her mother, Dalrymple paid petitioner $300 as an advance on fees. There is no evidence that petitioner took any steps to perform the service for which he was retained. Dalrymple's mother made numerous unsuccessful attempts to contact petitioner, including a written demand that he perform the requested service or refund the advance. He did neither.[3]

In the fourth matter (hereafter the Skybird matter), petitioner was employed in September 1983 by Roger and Virginia Oeland to file an action for damages on behalf of them and their company, Aero Specialties, Inc., against Skybird Aviation, Inc., regarding a dispute over an agreement to lease property. The Oelands paid petitioner $1,000 as an advance on fees. In December 1983 they received a copy of a draft of a complaint for damages; however, petitioner never filed a complaint on behalf of the Oelands or their company in this matter, and never returned any portion of the $1,000 advance. In a fifth matter (hereafter the Aero Specialties matter), unrelated to the Skybird matter, the Oelands retained petitioner to represent them at an arbitration proceeding in April 1984. After several hearings, a money award was rendered in favor of the Oelands' company but petitioner failed to inform them of the result of the arbitration hearings. The Oelands called and wrote to petitioner to inquire about the status of the arbitration, but received no response. They retained another attorney, who in December 1985 learned that a check for the payment of the award had been mailed to petitioner a year earlier and that the check had not cleared. The attorney wrote two letters to petitioner to inquire into the whereabouts of the check, but each went unanswered. The Oelands never received any portion of the arbitration award.

In the sixth matter (hereafter the Snyder matter), petitioner retained Terry Snyder in January 1984 to videotape sections of a highway where one of petitioner's clients had allegedly been speeding. Snyder made the tape and petitioner gave him a check for $175 drawn on his "attorney client trust account." Snyder deposited the check, but it was returned for insufficient

---

[2] The referee dismissed the second matter because of insufficient evidence; the State Bar does not challenge the determination.

[3] According to a declaration of petitioner's father, assertedly based on information from petitioner, Dalrymple did not want a divorce but was compelled to retain petitioner by her mother. Allegedly, Dalrymple ultimately informed petitioner privately that she did not wish to proceed and told him that he could keep the $300 "for his trouble."

funds. He called petitioner, who told him he would come by Snyder's business "to make the check good." Petitioner did not come by Snyder's business, make good the check, or otherwise pay him for the services rendered, despite the fact that Snyder secured a judgment in small claims court against him.

On February 25, 1987, the State Bar mailed a notice to show cause to petitioner, informing him that a formal hearing would be held to consider disciplinary charges. A mandatory settlement conference was scheduled for June 15, but petitioner did not attend. A formal hearing was then scheduled for September 23, 1987.

Petitioner did not appear at the hearing nor did anyone appear on his behalf. Testifying at the hearing were Bossi, Dalrymple's mother, Snyder, the Oelands, and a State Bar investigator. The principal referee found sufficient evidence on all counts except count 2 (see fn. 2, *ante*). He concluded that petitioner (1) failed to earn any portion of the sums paid to him with regard to the Bossi matter, the Dalrymple matter and the Skybird matter, and thereby wilfully violated his oath and duties as attorney pursuant to California Business and Professions Code sections 6068 and 6103 and Rules of Professional Conduct, rules 2-111(A)(2), 2-111(A)(3) and 6-101(A)(2);[4] (2) in the Aero Specialties matter, wilfully violated Rules of Professional

---

[4]While the referee did not specify which subdivisions of Business and Professions Code section 6068 petitioner violated, the record supports a finding of violations of subdivisions (i), (j) and (m), which provide:

"It is the duty of an attorney to do all of the following:

" . . . . . . . . . . . . . . . . .

"(i) To cooperate and participate in any disciplinary investigation or other regulatory or disciplinary proceeding pending against the attorney. . . .

"(j) To comply with the requirements of Section 6002.1 [which obligates members to maintain their current office address and telephone number with the State Bar].

" . . . . . . . . . . . . . . . . .

"(m) To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."

Section 6103 provides in pertinent part: "[A]ny violation of the oath taken by [an attorney], or of his duties as such attorney, constitute[s a] cause[ ] for disbarment or suspension."

Rules of Professional Conduct, rule 2-111(A) provides in pertinent part:

"(2) . . . a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

"(3) A member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."

Rule 6-101(A)(2) provides: "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

Conduct, rules 8-101(B)(1) and 8-101(B)(4);[5] and (3) in the Snyder matter, wilfully violated Business and Professions Code sections 6068, 6103, 6106 and 6128, subdivision (a).[6] He recommended that petitioner be disbarred. The department unanimously adopted the recommendation.

█ While we give great weight to both the department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we exercise our independent judgment in determining the appropriate discipline to be imposed (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]). █ Petitioner bears the burden of showing the department's recommendation is erroneous or unlawful (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066]), or that its findings are not supported by the record (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538-539 [213 Cal.Rptr. 236, 698 P.2d 139]).

█ Petitioner first contends that because he did not receive prior notice of the proceedings against him, we should remand the case to the State Bar either (a) to allow him an opportunity to defend against the charges or (b) with directions to consider his application for relief from default. █ █ Additionally, he contends the counts related to the Dalrymple and Snyder matters should be dismissed for insufficient evidence. █ Finally, he challenges the sanction of disbarment as wholly disproportionate to his misconduct, particularly given the absence of any prior record of discipline. None of these claims is persuasive.

Prior to 1980 petitioner was a deputy district attorney of Alameda County, but left that position after the filing of a claim for false arrest against

---

[5] Rule 8-101(B) provides in pertinent part: "A member of the State Bar shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

[6] Section 6106 provides: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension.

"If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to disbarment or suspension from practice therefor."

Section 6128 provides, in pertinent part: "Every attorney is guilty of a misdemeanor who . . .:

"(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

him. He states that the claim led to "a loss of confidence which resulted in a failed law practice in Oakland and the loss of all of his assets." In 1980 his father gave him the use of an office he leased in Van Nuys. Petitioner resisted his father's attempts to support him, moved out of the office in 1984, and resided with his girlfriend in South Pasadena. In the fall of 1985 he moved to his mother's home in Chatsworth, and his father gave up the lease on the Van Nuys office in July 1986.

 The record indicates that the State Bar sent the notice to show cause by certified mail to petitioner at the Van Nuys address—the latest address shown on the official membership records of the State Bar, and that a return receipt was received bearing an undecipherable signature. Notices of the mandatory settlement conference and of the formal hearing, and the referee's minute entry and decision, were also sent to him at the same address but were returned bearing notations reading "moved, left no address" and "ATT UNK" (apparently, attorney unknown). An additional copy of the hearing notice was sent to the South Pasadena address but was returned bearing the notation, "Return to sender, no longer here, new address unknown." The disbarment recommendation was sent to the Chatsworth address.

Petitioner contends he had no knowledge of the proceedings against him until after they were concluded, and insists we cannot disbar him because he was denied one of the fundamental prerequisites of due process—an opportunity to be heard. He relies solely on Code of Civil Procedure section 473.5, which permits a court to set aside a default judgment when service of summons has not resulted in actual notice, provided the lack of notice is not the result of avoidance of service or inexcusable neglect. His reliance is misplaced for two reasons. First, as its plain language shows, the statute does not apply to State Bar proceedings. Second, even if the statute were to apply to State Bar proceedings, petitioner's failure to receive actual notice was caused not by excusable neglect but simply by his failure to comply with the statutory requirement that he inform the State Bar of any changes in his address. (Bus. & Prof. Code, § 6002.1, subd. (a)(1); see also Rules Proc. of State Bar, rule 243.) We recently rejected a similar argument in *Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1186 [248 Cal.Rptr. 830, 756 P.2d 217]: "Petitioner mistakenly assumes that actual notice is a necessary element of proper service in disciplinary proceedings. At a minimum, the State Bar may send all notices to show cause and hearing notices by certified mail to the most recent address shown on an attorney's membership records. Such notices are deemed served at the time of mailing regardless of whether they are actually received by the attorney. [Citation.] It is the attorney's obligation to keep the State Bar informed of any address changes." (See also *Powers* v. *State Bar* (1988) 44 Cal.3d 337, 341 [243

Cal.Rptr. 386, 748 P.2d 324] ["Powers's failure to comply with his obligation to keep the State Bar informed of his current address is illustrative of his complete indifference to his professional obligations."].)

Petitioner stresses that in *Lydon, supra,* 45 Cal.3d 1181, and *Powers, supra,* 44 Cal.3d 337, the disciplined attorneys violated a specific order of this court to maintain their current addresses with the State Bar pursuant to California Rules of Court, rule 955, while in this case he violated the general statutory duty to that effect imposed on all State Bar members. But the fact that a violation of a specific order of this court is arguably somewhat more egregious than a violation of Business and Professions Code section 6002.1 does not mean that a disregard of the statutory duty, particularly in combination with professional indifference, is undeserving of discipline. Petitioner's position is further undermined by the fact that the obligation to keep his address current had been forcefully brought home to him on two prior occasions, when he was suspended from practice because of his failure to notify the State Bar where his annual membership billing could be mailed.

In the face of this undisputed evidence, petitioner asserts that the State Bar failed to make a reasonable effort to find him. He states that on October 8, 1986, the State Bar sent a letter "to the Chatsworth address where Petitioner could in fact have been contacted at any time after 1984;" however, he fails to mention that the letter, which apprised him of his duty "to cooperate and participate in any State Bar proceeding pending against" him and "strongly urge[d]" him to reply, went unanswered. The State Bar thus had no way of knowing that petitioner "could in fact have been contacted" at the Chatsworth address.[7]

Petitioner also contends that because the charge in the Dalrymple matter was resolved solely on the basis of hearsay, the finding of misconduct cannot stand. The majority of Dalrymple's mother's testimony concerned the letter she wrote to petitioner in which she accuses him of failing to communicate with her daughter and to perform services. She threatened to file charges of professional misconduct with the State Bar and demanded a reply. Petitioner failed to respond, and hence the testimony is admissible as an adoptive admission. (*Simpson* v. *Bergman* (1932) 125 Cal.App. 1, 9 [13 P.2d 531]; Evid. Code, § 1221.) Moreover, as concluded above, petitioner's

---

[7] Petitioner relies on the fact that in *Lydon* the State Bar took extraordinary measures in attempting to locate the disciplined attorney, including checking telephone directories, voter registration records, Department of Motor Vehicle records, etc. While the efforts undertaken in *Lydon* exceed those undertaken in this case, the State Bar still went beyond the "minimum," i.e., the duty set forth in the statute (*Lydon, supra,* 45 Cal.3d at p. 1186), by sending a copy of the notice of hearing to the South Pasedena address.

absence from the hearing was the result of his own indifference to and disregard of his statutory duties; any hearsay objection must therefore be deemed waived. (Cf. *Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 793 [205 Cal.Rptr. 834, 685 P.2d 1185] [attorney who voluntarily left hearing before witness took stand deemed to have waived hearsay objection].)

Petitioner next challenges the finding of misconduct in the Snyder matter. He relies on dictum in *Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 31 [216 Cal.Rptr. 130, 702 P.2d 212], to the effect that a cause of action for fraud will not survive a motion for nonsuit "if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise." The case is inapposite. The record in this case reveals that petitioner not only wrote a "bad check" but failed even to attempt performance after his continued assurance that he would "make good" the check. (See Prosser & Keeton, Torts (5th ed. 1984) § 109, p. 765.) It is settled that the "continued practice of issuing [numerous] checks which [the attorney knows will] not be honored violates 'the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice.'" (*Alkow* v. *State Bar* (1952) 38 Cal.2d 257, 264 [239 P.2d 871]; accord *Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1088 [245 Cal.Rptr. 404, 751 P.2d 463], and cases cited.) Petitioner's conduct in issuing the bad check, in failing to perform his subsequent promise to make good the check, and in failing to forward the arbitration award to the Oelands, is the functional equivalent of issuing "numerous" bad checks and supports the referee's finding of moral turpitude. (See *Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 324 [219 Cal.Rptr. 489, 707 P.2d 862] [issuance of numerous bad checks supports conclusion of deceit]; *Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 474 [169 Cal.Rptr. 581, 619 P.2d 1005] [mere fact that balance in attorney's trust account is below total of amounts deposited supports conclusion of misappropriation]; *Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 905 [126 Cal.Rptr. 785, 544 P.2d 921] [misappropriation of client's property is gross violation of general morality].)

In support of his position that the sanction of disbarment is disproportionate to the offenses charged, petitioner cites only one case—*Frazer* v. *State Bar* (1987) 43 Cal.3d 564 [238 Cal.Rptr. 54, 737 P.2d 1338] (hereafter *Frazer*). He contends "the decision of the *Frazer* Court to modify the sanction from disbarment to suspension requires *a fortiori* a similar leniency in this case." We disagree. In *Frazer* the disciplined attorney presented testimony from two psychiatrists and a psychologist that at the time of his misconduct he was suffering from significant depression and agoraphobia. In further mitigation, the attorney volunteered to make restitution, was fully cooperative with the hearing panel and was remorseful.

None of these factors are present in this case. Disabling psychological disease is a potential mitigating factor in imposing discipline but "only under the strictest evidentiary circumstances." (*Lydon, supra,* 45 Cal.3d at p. 1188.) Petitioner's vague references to "personal problems" and "severe psychological difficulties" fall far short of meeting this stringent standard. Moreover, petitioner has not cooperated in the State Bar's investigation. Indeed, his argument that his failure to receive notice was caused not by his negligence but by the State Bar's failure to make a reasonable effort to contact him is evidence of his unwillingness to accept responsibility for his actions. (See *Segal, supra,* 44 Cal.3d at p. 1087.) Petitioner does not express remorse for any of the acts that are the subject of the complaints here, nor has he made any attempt to return unearned fees or forward monies paid in satisfaction of the arbitration award to his clients.

■ Petitioner notes that, like the attorney in *Frazer,* he has no prior record of discipline. ■ We recently explained the relevance of lack of prior discipline to determining the appropriate sanction: "[I]t must be considered in light of the purpose of disciplinary proceedings '. . . to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession.' [Citation.] Thus, in order to meet his burden of showing that the recommendation of disbarment is erroneous, petitioner must establish that a lesser discipline would be adequate to prevent future serious misconduct. Prior exemplary conduct and a distinguished career may be relevant as factors indicative of the probability that misconduct will not likely recur, but if the attorney guilty of a pattern of serious misconduct does not show that he is presently able to avoid such misconduct, appropriate action must be taken to protect the public." (*Cooper* v. *State Bar* (1987) 43 Cal.3d 1016, 1029 [239 Cal.Rptr. 709, 741 P.2d 206].) Thus in *Frazer* we held "It is our judgment that disbarment would be too harsh in light of the mitigating circumstances presented and the fact petitioner has an otherwise unblemished record both before this one aberrant period and since he began psychiatric treatment." (43 Cal.3d at pp. 579-580.)

■ *Frazer* is plainly distinguishable. As shown above, the record here is completely devoid of mitigating factors. Moreover, petitioner's record is far from "otherwise unblemished," his career well short of "distinguished." By his own account, a claim for false arrest was filed against him that led to his leaving his position as deputy district attorney and a "loss of confidence" that in turn resulted in a failed law practice. He has twice been suspended for failure to pay his State Bar fees. Moreover, in *Frazer* the various acts of misconduct stemmed from the same causes, specifically from the attorney's financial and psychological problems, which we found were episodic and limited to one aberrant period. The only cause for petitioner's

misconduct suggested by the record is his complete disinterest in the practice of law, a suggestion reinforced by his attitude toward these proceedings.

In sum, petitioner wholly fails to carry his burden of demonstrating that the recommendation of the department is erroneous. (*Kent* v. State Bar (1987) 43 Cal.3d 729, 735 [239 Cal.Rptr. 77, 739 P.2d 1244] [habitual disregard of clients' interests combined with failure to communicate with clients constitutes acts of moral turpitude justifying disbarment].) Accordingly, we conclude it is in the best interest of the public, the profession, and the courts that petitioner be disbarred.

It is ordered that Daniel W. Bowles III be disbarred from the practice of law in California, that his name be stricken from the roll of attorneys, that he comply with the requirements of rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective on the finality of this opinion.