[No. S007224. Dec. 18, 1989.]

GERALD LEE WALKER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Gerald Lee Walker, in pro. per., and L. Steven Goldblatt for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

**OPINION**

**THE COURT.**—We review the recommendation of the Review Department of the State Bar (review department) that petitioner Gerald Lee Walker be disbarred from the practice of law in California. After considering the record and petitioner's objections, we accept the review department's recommendation.

### BACKGROUND

Petitioner was admitted to the California Bar in 1972. From 1972 until 1978, he worked at a law firm in Merced. He then moved to Sonora and opened his own office; within a few months, however, he was forced to close his practice in order to seek treatment for alcohol abuse. In 1979, petitioner returned to Merced and formed a partnership with Ralph Temple.

In the early 1980's, petitioner ran into severe financial and personal problems. His partnership with Temple dissolved in April 1983 (though he continued to share office space and overhead expenses with Temple until leaving the state the next year). Soon thereafter, he and his wife filed for divorce.

The review department's recommendation of disbarment stems from petitioner's abandonment of his practice in late 1983. In September of that year, petitioner began missing work. He failed to return telephone calls from clients, did not show up at meetings and court appearances, and rarely

spoke with Temple or Linda Land (Land), his secretary. During a two-week period in November, he did not come into the office at all. He neither communicated with his clients during these two weeks nor arranged for another attorney to monitor their cases; instead, he merely instructed Land to obtain continuances on all matters and tell clients that he was ill. Throughout the fall, Temple and Russell Whiting, an attorney who had referred several cases to petitioner, conveyed messages to petitioner from several clients who had asked them about his whereabouts; though he continually assured Temple and Whiting that he would handle the matters, petitioner never responded to his clients' inquiries.

On December 17, 1983, petitioner left Merced altogether, going first to Stockton for a few days and then to his parents' home in Oregon. He did not tell anyone that he was leaving and made no arrangements for another attorney to handle his caseload, even though at the time he had at least 100 open client files.[1] He did, however, take the file in the Robles matter with him, later receiving a $100,000 fee for referring the case to another attorney.

On the day that he left Merced, petitioner received a telephone call from the owner of a local car leasing agency, informing him that he was delinquent on certain payments. Petitioner tendered a check in the amount of $1,700 to cover the delinquency, and then drove the car to Stockton and abandoned it. The check that petitioner tendered was drawn on his client trust account, however, and the bank later returned it after Land had the account frozen. While in Stockton, petitioner also cashed a counter check for $1,000 drawn on his client trust account.

After petitioner left Merced, Temple and Land made several attempts to contact him and locate missing files. At one point, petitioner agreed to meet Temple at a specified time and place to discuss his pending cases but failed to show up for the meeting. Temple took several steps to protect petitioner's clients, notifying them and various courts that petitioner had abandoned his practice, referring some cases to other attorneys, handling some himself, and hiring additional office help. Temple eventually notified the Merced County Bar Association and the State Bar of petitioner's conduct.

The record reveals that petitioner has had a problem with alcohol and drugs since adolescence. Though he entered an Alcoholics Anonymous (A.A.) treatment program in 1978, he suffered at least four "bouts" with alcohol in the following three years. He has not attended an A.A. meeting

---

[1] Both the hearing panel and the review department found that at the time petitioner abandoned his practice he had approximately 200 open client files. The record, however, provides clear and convincing evidence only that petitioner had at least 100 active case files at that time.

since August 1984, though he testified that he has also not had a drink since his last bout in May 1981. He admits that his consumption of drugs—including amphetamines, methamphetamines, cocaine, marijuana, painkillers prescribed by his doctors, and other prescription drugs that his wife obtained from the hospital where she worked as a nurse—continued until April 1986.

Petitioner's use of alcohol and drugs caused him to suffer a severe pancreatic condition beginning in 1978, prompting over 50 visits to the emergency room and 16 hospitalizations between 1982 and 1986. Petitioner's use of drugs continued during this period despite his doctor's warnings that alcohol and drugs would seriously exacerbate his condition.

Throughout the later months of 1983 and the early months of 1984, petitioner experienced paranoid delusions. He testified that he believed that Temple and other former associates were attempting to steal clients from him, that the Defense Department had bugged his apartment and was monitoring his movements, and that other parties were trying to physically harm him. At one point, he carried a gun and holster. The testimony of several witnesses substantiated petitioner's paranoid behavior during this period.

In January 1984, a friend referred petitioner to Dr. Brian Robinson, a psychologist. After a few meetings with Dr. Robinson, petitioner's delusionary stage subsided.

Since leaving Merced, petitioner has lived primarily with his parents in Oregon, worked as a carpenter's assistant in Oklahoma, and helped with the sale of his uncle's company in Utah. He has voluntarily not practiced law since 1983. He testified that in April 1986 he underwent a religious experience and has not felt pain or seen a medical doctor since. Also, he has not received any psychological counseling since his visits to Dr. Robinson. At the time of his hearing in June 1987, petitioner was physically healthy and no longer suffering from any active mental illness.

## STATE BAR COURT PROCEEDINGS

After learning from Temple that petitioner had abandoned his clients and was behaving erratically, the Merced County Bar Association conducted a hearing and determined that petitioner was incompetent to practice law. It then referred the matter to the State Bar, which, in June 1985, instituted a proceeding to place petitioner on inactive status pursuant to Business and Professions Code, section 6007, subdivision (b)(3) (hereafter the section

6007 proceeding).[2] In December 1986, the State Bar instituted a disciplinary proceeding against petitioner based on the same set of facts. It then consolidated the two matters and held a hearing in June 1987.

With respect to the section 6007 proceeding, the hearing panel concluded that petitioner was presently able to discharge the duties of an attorney and should therefore not be enrolled as an inactive member. With respect to the disciplinary proceeding, the hearing panel made five conclusions: (1) Petitioner willfully withdrew from employment in December 1983 without taking steps to avoid foreseeable prejudice to his clients in violation of rule 2-111(A)(2) of the Rules of Professional Conduct;[3] (2) throughout the fall of 1983, he failed to perform legal services competently in violation of rule 6-101(A)(2); (3) he violated rule 6-101(B) (2) by continuing to represent clients in legal matters even though he was not physically, emotionally or mentally able to do so; (4) he violated Business and Professions Code section 6106 by willfully misappropriating or attempting to misappropriate funds from his client trust account; and (5) the record in general reveals that petitioner willfully breached his duties as an attorney under Business and Professions Code section 6068.

In mitigation, the hearing panel noted petitioner's lack of a prior disciplinary record, his alcohol and drug dependency, his pancreatitis, his episode of paranoid delusions, and the marital and financial tensions he had experienced. It also emphasized petitioner's efforts at rehabilitating himself, including his voluntary absence from the law since December 1983, his recent abstinence from alcohol and drugs, and his religious conversion. Finally, it noted that petitioner's pecuniary gain from his misconduct was very small.

The hearing panel listed significant evidence in aggravation of petitioner's misconduct as well. First, he has not demonstrated any remorse for his prior actions: He has neither made inquiries into the status of his clients since abandoning their cases nor attempted to make restitution to his client trust account. The hearing panel next noted that instead of cooperating with the State Bar's investigation of his case, he has made copious procedural objections and requests for continuances. Finally, it found that petitioner

---

[2] Subdivision (b)(3) instructs the Board of Governors of the State Bar to place a member on inactive status if: "After notice and opportunity to be heard before the board or a committee, the board finds that the member, because of mental infirmity or illness, or because of the habitual use of intoxicants or drugs, is (i) unable or habitually fails to perform his or her duties or undertakings competently, or (ii) unable to practice law without substantial threat of harm to the interests of his or her clients or the public."

[3] New Rules of Professional Conduct became effective May 27, 1989. All "rule" citations refer to the former Rules of Professional Conduct, effective January 1, 1975, and in effect at times relevant herein, unless otherwise indicated.

continued taking illegal drugs even after receiving warnings from his doctor and undergoing treatment for alcoholism, and has refused to undergo any regular medical treatment or psychiatric counseling.

The hearing panel recommended that petitioner be suspended from the practice of law in California for five years, that the suspension be stayed, and that he be instead placed on probation for five years under several conditions. These conditions included one year of actual suspension, restitution, completion of the State Bar's Pilot Program on Alcohol Abuse as well as abstinence from all intoxicants, completion of a psychiatric and medical examination with further treatment if necessary, and submission of regular progress reports along with detailed accountings to the State Bar of the receipt of any client funds.

The review department adopted the substance of the hearing panel's findings of fact and conclusions of law, though it made several amendments and deletions. It noted that, immediately prior to the date of the review department hearing, petitioner had reimbursed the auto leasing agency the principal sum he owed him but had paid no interest. It also found that petitioner's conduct in abandoning his practice and misappropriating $1,000 from his client trust account constituted acts of moral turpitude. By a vote of 11 to 1, it rejected the disciplinary recommendation of the hearing panel and instead recommended that petitioner be disbarred. Three of the referees stated that they based their recommendation of disbarment on petitioner's "repeated statements that he would not participate in psychological counseling." Two referees believed that petitioner would more likely than not repeat his acts of misconduct. One referee believed that petitioner had not undergone a sufficient period of rehabilitation. The referee who voted against the recommendation of disbarment favored the hearing panel's recommendation of suspension with conditions.

### PETITIONER'S CONTENTIONS

Petitioner contends that he was denied the effective assistance of counsel by Melbourne Gwin (Gwin), the attorney who represented him up through the time of his hearing before the hearing panel.

Petitioner first claims that Gwin failed to call several key witnesses. For instance, he asserts that Gwin should have called Dr. Robert Larsen to support the argument that petitioner's conduct in late 1983 and early 1984 was not willful. Dr. Larsen examined petitioner at the request of the State Bar in January 1985, concluding that petitioner needed continued medical supervision, formal psychiatric treatment and regular attendance at A.A. even though his chemical dependence was in remission. Though Dr. Larsen

himself did not testify, the hearing panel referee did review his report. Moreover, contrary to petitioner's assertion, Dr. Larsen's report does not contradict the State Bar's recommendation; in fact, it directly supports the contention that petitioner should not be allowed to practice law without supervision. Petitioner also claims that Gwin should have called Leonard Hobbs, who worked for petitioner in Merced as an investigator. The record reveals, however, that petitioner was aware that Hobbs could not be located on the day of the hearing, despite several attempts by Gwin and the court to contact him. Moreover, had Hobbs been available, his testimony regarding petitioner's personal problems would likely have been cumulative to the testimony of petitioner and other witnesses. Petitioner finally specifies eight other witnesses that Gwin should have called. He does *not* specify, however, the substance of their proposed testimony or how it would have altered the State Bar's recommendation. Gwin placed 12 witnesses on the stand on petitioner's behalf; his failure to call others certainly does not, on its face, support a claim of ineffective assistance of counsel.

Petitioner next asserts that Gwin should have introduced the medical records from his numerous hospital visits for pancreatitis between 1982 and 1986. He neither offers copies of these records nor summarizes their contents; he merely implies that they would have shown that he became addicted to the drugs that his doctors prescribed for his condition. The State Bar took full note of petitioner's illness and his addiction to prescription drugs; it also found, however, and petitioner never rebutted, that he was addicted to other illegal drugs and that the consumption of these drugs exacerbated his pancreatitis. In short, he offers no evidence that the failure to introduce these medical records in any way prejudiced his case.

Petitioner then claims that Gwin failed to request a hearing de novo, petition for review or file other unspecified motions. Since petitioner had no new evidence to present after his hearing before the hearing panel, however, petitioner was not entitled to a hearing de novo. Contrary to petitioner's assertion, Gwin *did* timely file a petition for review. Petitioner specifies neither which other "crucial motions" he expected Gwin to file nor how these motions could have affected the State Bar's recommendation.

We are not persuaded that the record demonstrates petitioner was denied the effective assistance of counsel. Assuming, arguendo, that it did so demonstrate, however, petitioner's complaints do not suffice to call into question the fundamental fairness of the hearing he received.

■ State Bar disciplinary proceedings are administrative in nature, not governed by the rules of criminal procedure. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 225-226 [113 Cal.Rptr. 175, 520 P.2d 991].) Petitioner's only

due process entitlement is to a "fair hearing." (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 612, 634 [238 Cal.Rptr. 377, 738 P.2d 723].)

Fundamental fairness sufficient to meet the demands of due process has never been held to encompass the right to assistance of counsel in State Bar disciplinary proceedings, under either the United States Constitution or the California Constitution. On the contrary, the general rule is that there is no due process right to counsel in civil cases. (*White* v. *Board of Medical Quality Assurance* (1982) 128 Cal.App.3d 699, 707 [180 Cal.Rptr. 516] [civil disciplinary action against medical licensee].) Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation. (*Lassiter* v. *Department of Social Services* (1980) 452 U.S. 18, 25 [68 L.Ed.2d 640, 648. 101 S.Ct. 2153]; *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 34 [154 Cal.Rptr. 529, 593 P.2d 226] [indigent defendants in paternity actions brought by the district attorney, subject to possible deprivation of liberty, have right to counsel].) Obviously, petitioner here is not in any sense put at risk as regards his physical liberty by the disciplinary proceedings against him, and consequently cannot demonstrate a right to assistance of counsel.

■ Petitioner's assertion of a right to effective assistance of counsel depends on a demonstrated right to counsel. (*Chevalier* v. *Dubin* (1980) 104 Cal.App.3d 975, 979 [164 Cal.Rptr. 118].) As explained above, there is no constitutional right to the assistance of counsel in State Bar proceedings. Thus petitioner's contention he was impermissibly denied the effective assistance of counsel is without merit. The record establishes he has received fundamentally fair treatment overall at the hands of the disciplinary authorities.

■ Petitioner also contends that the State Bar's dismissal of the section 6007 proceeding compels the dismissal of the disciplinary proceeding as well. We disagree. In a proceeding pursuant to section 6007, the State Bar must decide whether or not an attorney should be involuntarily enrolled as an inactive member; since the hearing panel found that petitioner no longer suffered from an incapacitating mental illness or drug addiction, it could not conclude that he should be placed on inactive status at that time. A disciplinary proceeding gives the State Bar more discretion to determine the proper way to protect the public from an errant attorney. The State Bar concluded that petitioner's future compliance with his oath and duties as an attorney could only be ensured if it closely monitored his continued practice of law. We find no inconsistency in the State Bar finding first that petitioner was not incapacitated, and second that his practice should be supervised in order to protect the public.

■ Petitioner's final contention is that, due to his pancreatitis, alcohol and drug addiction and paranoid delusions, he lacked the necessary state of mind at the time that he abandoned his practice to justify discipline by the State Bar. Again, we disagree. A showing of willfulness is not always essential to establishing that an attorney has improperly withdrawn from employment or failed to act competently. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 184 [242 Cal.Rptr. 196, 745 P.2d 917].) Gross carelessness and negligence in failing to communicate with clients or to attend to their needs may suffice. (*McMorris* v. *State Bar* (1981) 29 Cal.3d 96, 99 [171 Cal.Rptr. 829, 623 P.2d 781].) The review department found that petitioner knew the nature of his acts, knew the probable consequences of his acts, knew that he had abandoned his clients' interests and knew that his clients would suffer by his actions. Petitioner knew that the two checks he wrote for a total of $2,700 were drawn on his client trust fund account. Petitioner testified that when he left Merced in December of 1983, he knew that he had clients. He was sufficiently cognizant at that time to take with him the files relating to the Robles matter, which would eventually net him over $100,000 in referral fees. We think petitioner had the necessary state of mind at the time he abandoned his practice, and afterwards, to warrant discipline.

### DISPOSITION

■ Turning to the appropriate level of discipline, we undertake an independent examination of the record while giving great weight to the recommendation of the review department. In so doing, we take into account several considerations, including the protection of the public, the promotion of confidence in the legal profession, and the maintenance of professional standards. Petitioner bears the burden of demonstrating that, in light of these objectives, the recommendation of the review department is erroneous or unlawful. (*Kennedy* v. *State Bar* (1989) 48 Cal.3d 610, 616-617 [257 Cal.Rptr. 324, 770 P.2d 736].)

■ Petitioner has failed to meet that burden. "[H]abitual disregard by an attorney of the interests of his or her clients combined with the failure to communicate with such clients constitute acts of moral turpitude justifying disbarment." (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431].) Although it is true that petitioner has no disciplinary record prior to this case, petitioner abandoned his practice in 1983 and disregarded the interests of his many clients over several months in 1983 and 1984, failing also to communicate with those clients. In the past, we have not hesitated to impose the most severe discipline on attorneys such as petitioner who have disregarded the interests of a large number of their clients over an extended period of time. (See, e.g., *Slaten* v. *State Bar* (1988) 46 Cal.3d 48 [249 Cal.Rptr. 289, 757 P.2d 1] [failure to perform services

and communicate with clients in at least six matters over a six-year period following two previous suspensions for similar offenses and revocation of probation for failing to comply with conditions of suspension]; *Ballard* v. *State Bar* (1983) 35 Cal.3d 274 [197 Cal.Rptr. 556, 673 P.2d 226] [failure to perform services or communicate with clients in thirty-four matters over a seven-year period].) In *McMorris, supra,* 35 Cal.3d 77, for instance, the petitioner failed to perform the services for which he had been retained and failed to respond to his clients' inquiries in seven separate matters involving five clients. In addition, he failed to refund retainer fees to three of these clients. *(Id.* at pp. 81-82.) After noting that we had previously disciplined the petitioner for similar derelictions *(McMorris, supra,* 29 Cal.3d 96), we ordered the petitioner disbarred. *(McMorris, supra,* 35 Cal.3d at p. 85.)

Two recent cases are also on point. The attorney in *Bowles* v. *State Bar* (1989) 48 Cal.3d 100 [255 Cal.Rptr. 846, 768 P.2d 65] accepted retainer fees from four separate clients yet failed to take any actions to advance their claims. He did not respond to his clients' numerous inquiries, and when reached, misrepresented that they need not worry about the status of their cases. He also misappropriated a client's award in another case. *(Id.* at pp. 103-105.) Despite the attorney's references to "personal problems" and "severe psychological difficulties," we adopted the review department's recommendation of disbarment, noting further that his record was "far from 'otherwise unblemished' [and] his career well short of 'distinguished.'" *(Id.* at pp. 110-111.)

A similar fate befell the attorney in *Kent* v. *State Bar* (1987) 43 Cal.3d 729 [239 Cal.Rptr. 77, 739 P.2d 1244]. We disciplined him on four different occasions over a thirteen-year period—including two public reprovals, a one-year suspension with four years of probation, and finally disbarment—for his failure to prosecute claims while reassuring clients that he was doing so. *(Id.* at p. 731.) We finally ordered the attorney's disbarment, relying on the facts that his misconduct had seriously harmed his clients and that he had actively deceived them. *(Id.* at p. 735.)

Petitioner's abandonment of his clients and attempted misappropriation of their funds are certainly egregious acts of professional misconduct. Although petitioner's lack of a prior disciplinary record is properly considered as a mitigating circumstance, this factor must be considered in light of significant aggravating circumstances, including petitioner's refusal to seek regular psychological counseling or medical treatment, petitioner's abandonment of all of his sizeable caseload except for the Robles matter, which garnered him a $100,000 referral fee, and his failure to cooperate with the State Bar's investigation.

■ When an errant attorney asserts, as does petitioner, that he is free of drug addiction which caused his past misconduct, he must prove that "the risk of continued substance abuse causing future acts of misconduct is virtually nonexistent." (*Twohy* v. *State Bar* (1989) 48 Cal.3d 502, 514 [256 Cal.Rptr. 794, 769 P.2d 976].) In the past, we have found incomplete or short-term efforts at rehabilitation insufficient to warrant reducing the severity of discipline recommended by the State Bar. (See, e.g., *Twohy, supra,* 48 Cal.3d at p. 515 [two-month period of rehabilitation from cocaine addiction]; *Gary* v. *State Bar* (1988) 44 Cal.3d 820, 828 [244 Cal.Rptr. 482, 749 P.2d 1336] [attorney completed clinical program one month before State Bar hearing and still resided in residential recovery facility]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 664 [238 Cal.Rptr. 394, 738 P.2d 740] [eighteen-month period of sobriety].)

Petitioner has not met this burden. He claims that he has not drunk alcohol since 1981 or taken drugs since 1986 and that God has recently delivered him from his addictions. Dr. Larsen, the psychiatrist who examined petitioner in January 1985, did not have as optimistic a view of petitioner's recovery: "At present, though I do not feel he needs to be in active psychiatric treatment, it is my best medical opinion that he should be followed regularly by a physician. If he is to continue as a licensed attorney, it would be advisable that periodic, possibly quarterly reports be made by his treating physician . . . . [The] prognosis is hopeful yet guarded." Despite the doctor's recommendation, petitioner has refused to recognize the importance of continued participation in A.A. or a drug rehabilitation program.[4] Even those attorneys whose rehabilitation we found to be insufficient had completed, or at least enrolled in, some type of rehabilitation program. (See, e.g., *Twohy, supra,* 48 Cal.3d at p. 515; *Gary, supra,* 44 Cal.3d at p. 828; *Rosenthal, supra,* 43 Cal.3d at p. 664.) Before we sanction

---

[4] Petitioner asserts that participation in a rehabilitation program would offend his religious beliefs. He never specifies what religious beliefs he actually holds, or how counseling would offend them. At oral argument, petitioner conceded that the beliefs in question do not stem from membership in any recognized church or other religious group. Moreover, he visited a least one medical doctor and at least two psychologists in preparation for his State Bar hearing. He has not explained these departures from his asserted religious beliefs. Furthermore, at oral argument petitioner conceded he had no religious objection to attending A.A. meetings, yet he has refused to involve himself on an ongoing basis with that therapeutic program, as well as declining professional psychiatric or psychological help. Under these circumstances, we are hesitant to dismiss his refusal to undergo counseling as an example of his free exercise of his religious beliefs. "[A]lthough judicial examination of the truth or validity of religious beliefs is foreclosed by the First Amendment, the courts of necessity must ask whether the claimant holds his belief honestly and in good faith or whether he seeks to wear the mantle of religious immunity merely as a cloak for illegal activities." (*People* v. *Woody* (1964) 61 Cal.2d 716, 726 [40 Cal.Rptr. 69, 394 P.2d 813] [prosecution for peyote use struck down as infringing Indians' established religion]; see also *People* v. *Mullins* (1975) 50 Cal.App.3d 61, 72 [123 Cal.Rptr. 201] [prosecution for growing marijuana does not interfere with defendant's freedom of religion].)

petitioner's continued practice of law in the state, he must present us with more reliable evidence that his "long-standing addiction is permanently under control" (*Gary, supra,* 44 Cal.3d at p. 828) and that he has undergone "a meaningful and sustained period of successful rehabilitation" (*Rosenthal, supra,* 43 Cal.3d at p. 664). His own verbal assurances that he will never drink or take drugs again are not sufficient proof that he has overcome a history of alcohol and drug abuse stretching back to his adolescence.

■■■■ In addition, disbarment is consistent with the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V). Standard 2.4(a) provides that disbarment is the appropriate level of discipline for the willful failure to perform services demonstrating the member's abandonment of the causes in which he or she was retained. In December, 1983, petitioner abandoned his entire practice and made no arrangements for another attorney to protect his clients' interests. Moreover, standard 2.2(a) provides that disbarment is the appropriate level of discipline for the willful misappropriation of clients funds absent the most compelling mitigating circumstances. In drawing the $1,700 check to the auto leasing agency and the $1,000 counter check on his client trust account, petitioner misappropriated or attempted to misappropriate from his clients $2,700, a sum we find to be significant, and has offered no evidence in mitigation of this behavior.[5]

In short, even though petitioner has no prior disciplinary record and his acts in late 1983 and early 1984 appear to constitute an isolated, though extensive, period of wrongdoing, we have several reasons to doubt whether he will conform his future conduct to the professional standards demanded of California attorneys. First, even at this late date, he has never acknowledged the impropriety of his abandonment of his clients and misappropriation of their funds. Second, he has not cooperated with the State Bar in its investigation. Finally, he has refused to recognize the need and the importance of recommended rehabilitation programs. The risk that petitioner may engage in other professional misconduct if allowed to continue practicing law is sufficiently high to warrant his disbarment.

---

[5] At oral argument, petitioner relied upon the fact that portions of funds since restored to his client trust account are as yet unclaimed by former clients to suggest that the $2,700 may have represented fees owed to petitioner. This has the earmarks of an after-the-fact rationalization. Ordinarily, funds on deposit in a client trust account represent monies belonging to clients. (Rules Prof. Conduct, rule 8-101(A).) An attorney is ethically bound to withdraw from his client trust account any monies owed as fees to the attorney at the earliest reasonable time after the amount of the fee is fixed. (Rules Prof. Conduct, rule 8-101(A)(2).) If there is a dispute as to whether certain funds in the client trust account represent monies owed to the attorney as fees, they are to remain in the client trust account until the dispute is finally resolved. (*Ibid.*) The record in no manner supports the notion that petitioner was simply withdrawing amounts which had been fixed as fees owed to him by particular clients when he wrote the checks for $2,700.

Petitioner Gerald Lee Walker is disbarred from the practice of law in California. His name shall be stricken from the roll of California attorneys. He is ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply with rule 955 of the California Rule of Court may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order shall be effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied February 15, 1990.