[No. S009891. Feb. 8, 1990.]

CLIFFORD DALE BERCOVICH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Clifford Dale Bercovich, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Andrea T. Wachter for Respondent.

OPINION

THE COURT.*—This is a proceeding pursuant to Business and Professions Code section 6083, subdivision (a) and rule 952(a) of the California Rules of Court to review a unanimous recommendation by the Review Department of the State Bar Court that petitioner Clifford Dale Bercovich be disbarred for having willfully violated an order of this court that required him to comply with rule 955 of the California Rules of Court while on interim suspension for conviction of grand theft.[1]

Petitioner contends disbarment is unwarranted because his failure to comply with rule 955 was caused by chronic diarrhea and related medical ailments, which resulted in or exacerbated emotional difficulties that prevented him from complying with our order.

We reject petitioner's belated and unsupported claim of emotional paralysis caused by diarrhea. The State Bar's finding that he willfully violated our order is amply supported by the evidence. Moreover, petitioner's conduct throughout the lengthy proceedings against him reflects an inability to practice law. If his alleged chronic diarrhea and emotional problems are so severe that they have rendered him unable to comply with the simple requirements of rule 955, the most reasonable conclusion is that his ailments also render him unable to practice law, especially in light of the absence of credible evidence that his problems have been resolved. We conclude petitioner must be disbarred to protect the public.

FACTS

In September 1985, the State Bar Court issued a notice to show cause based on allegations that petitioner had misappropriated client funds. (Bar Misc. No. 5622.) Before the decision of the review department in that proceeding, petitioner was convicted in March 1987 of violating Penal Code

---

*Before Lucas, C. J., Mosk, J., Panelli, J., Eagleson, J., and Kennard, J.
[1] All further references to rule 955 are to California Rules of Court, rule 955.

sections 487 (grand theft) and 12022.6, subdivision (b) (taking, damaging, and destroying property of a value greater than $100,000). The conviction was based on the same facts that had given rise to Bar Misc. No. 5622. The superior court sentenced petitioner to three years of formal probation subject to conditions including payment of a $2,000 restitution fine and three hundred and twenty hours of community service.[2]

The conviction gave rise to the present State Bar proceeding (Bar Misc. No. 5453). On May 20, 1987, after receiving notice of the conviction, we ordered pursuant to Business and Professions Code section 6102, subdivision (a) that petitioner be suspended from the practice of law pending final disposition of the proceeding. Our order required petitioner to comply with rule 955, subdivisions (a) and (c). On June 17, 1987, we denied his petition to vacate our interim suspension order, but, for good cause shown, delayed the effective date of his suspension to August 17, 1987. On August 12 and 17, 1987, we denied his two applications for further delay of the effective date.

While the interim suspension in Bar Misc. No. 5453 was in effect, the review department in September 1987 adopted the decision of the referee in the original proceeding (Bar Misc. No. 5622) that petitioner had willfully misappropriated more than $100,000 of a client's funds and had rendered false and misleading accountings to the client. Briefly stated, the State Bar found as follows: From March 1980 to September 1980, petitioner received a total of $145,166.19 from a client. Petitioner was to hold this sum for the benefit of the client in furtherance of the client's tax avoidance plan. (These funds are hereafter referred to as the client's funds.) Petitioner deposited only $9,278 of the total into the client's trust account.

Without the knowledge or consent of the client, petitioner made various loans and investments with the balance of $135,888.19, including loans to petitioner's relatives. None of the loans were evidenced by promissory notes.

Between March 1980 and December 1982, petitioner made several partial payments of the client's funds to him at his request. At no time after April 1980, however, was petitioner able to return all the client's funds. In the fall of 1982, the client first demanded return of the total balance of his funds. Petitioner did not comply with the demand, and the client was forced to sue to recover his funds from petitioner and the borrowers. The suit was settled in November 1985, and the client was made whole.

---

[2] The judgment provided that the offense could be reduced to a misdemeanor if petitioner successfully completed probation. He did so, and the offense was reduced.

Shortly after the review department's decision in the original proceeding (Bar Misc. No. 5622), petitioner's criminal conviction became final, and we referred the conviction proceeding (Bar Misc. No. 5453), in which we had previously ordered an interim suspension, to the State Bar on November 12, 1987, for a hearing, report, and recommendation as to the discipline to be imposed for the conviction. Our referral order noted that petitioner had failed to file an affidavit pursuant to rule 955(c), as required by our interim suspension order of May 20, 1987. We therefore also referred Bar Misc. No. 5453 to the State Bar for a hearing and report as to whether petitioner had willfully failed to comply with our prior order and, if so, for a recommendation as to the appropriate discipline to be imposed for that violation.

While the referral was pending, petitioner failed to seek timely review of the review department's September 1987 decision in the original proceeding (Bar Misc. No. 5622). On April 6, 1988, we denied petitioner's request for relief from default, and we adopted the review department's discipline recommendations. We suspended petitioner from the practice of law for five years effective May 6, 1988, stayed execution of the suspension, and placed petitioner on probation for five years subject to various conditions including compliance with rule 955 and actual suspension for the first two years of the probation period.

In the referral matter (Bar Misc. No. 5453), petitioner and the State Bar stipulated that no further proceedings should be held or discipline imposed as a result of his criminal conviction because the facts that gave rise to it were the same as those dealt with in the original proceeding (Bar Misc. No. 5622). The State Bar and petitioner agreed that it would be unfair to discipline him both in the original and referral proceedings based on the same facts. The stipulation did not address his failure to comply with rule 955.

The State Bar held a hearing on August 16, 1988, in Bar Misc. No. 5453 regarding the rule 955 matter. Petitioner was present and represented by counsel. Petitioner admitted he was aware that our May 20, 1987, order required compliance with rule 955 but that he did not send written notices to any clients informing them of his suspension. Petitioner testified that he failed to comply with rule 955 because, as of the effective date of our orders in Bar Misc. No. 5453, he had no clients or pending matters. According to petitioner, he began full-time employment as a nonlawyer on May 1, 1987, and had disposed of his client matters by then.

The referee found petitioner's testimony to be contradicted by two clients, Gutman and Moline, whom he represented in 1987 in their capacities as conservators of their mother. Before the effective date of our order requiring compliance with rule 955, petitioner had requested information

from them for a biennial accounting to the probate court. They provided him with the information. Petitioner testified he had informed them that he could no longer represent them. (He did not, however, dispute that he had failed to inform them of his suspension.) Petitioner also claimed that he had sent them a substitution of attorney form.

Both clients testified that petitioner had never told them he could no longer represent them and that neither had ever received a substitution form. Gutman further testified that, after hearing nothing from petitioner for several months, Gutman had tried to call him but was informed by the telephone company that petitioner's telephone had been disconnected with no forwarding number. Gutman eventually had to contact the State Bar to learn what had happened to petitioner. The referee found the former clients' testimony to be true.

The referee found the following factors in mitigation of petitioner's misconduct: (1) He had been active in State Bar and county bar association activities; he had served as a judge pro tempore in municipal court; and he had been active in the affairs of his synagogue. (2) He is married and has two children.[3] (3) There is no evidence that any client was harmed by petitioner's failure to comply with rule 955. The referee rejected as a mitigating factor petitioner's claim that his failure to comply with rule 955 was caused by emotional trauma that resulted from the criminal and disciplinary proceedings against him.

The referee found two aggravating factors: (1) Petitioner's previous discipline in the original proceeding (Bar Misc. No. 5622) was based on the "very serious offense" of misappropriation of client funds. (2) Petitioner's violation of our order in the original proceeding, which order also required compliance with rule 955. The referee characterized this as a "continuing disregard of his [petitioner's] obligations under Rule 955 [that] demonstrates an inexcusable indifference to his responsibilities as a member of the Bar."

The referee also entered the following conclusions of law: (1) Petitioner's failure to comply with rule 955 was clearly willful. (2) The fact that he had few, if any, clients to notify and the absence of harm did not excuse his failure to notify those clients he did have or his failure to file the required affidavit with either this court or the State Bar.

---

[3] The basis of this finding is unclear. The State Bar's Standards for Attorney Sanctions for Professional Misconduct do not include marital or familial status among the examples of mitigating factors. (Rules Proc. of State Bar, div. V, std. 1.2(e).) Although such status might be a mitigating factor in a given case, the record before us does not reflect how petitioner's marital and familial status relates to his misconduct or to his fitness and ability to practice law.

Based on these findings and conclusions, the referee filed his decision on August 25, 1988, recommending that petitioner be disbarred for his failure to comply with rule 955 in Bar Misc. No. 5453.

Petitioner filed an application for a hearing de novo and to present additional evidence. He raised three objections to the referee's decision: (1) Petitioner was not given an opportunity at the hearing to rebut his former clients' testimony. (2) He was not allowed to submit legal authorities on his behalf. (3) He failed to present evidence of his physical and mental well-being because he did not realize the hearing was the proper forum in which to present such evidence. The application was denied on September 28, 1988.

On February 6, 1989, the review department adopted the referee's disciplinary recommendations by a vote of 15 to 0.

Petitioner then filed in this court two documents that he characterized as objections to the referee's decision. We deemed the objections to be a petition for review and issued a writ of review. We will discuss petitioner's contentions in detail below (pp. 125-133, *post*), but, briefly stated, his primary argument is that emotional problems and chronic diarrhea were the reasons for his failure to comply with rule 955.[4]

While the foregoing matters were unfolding in this proceeding, the State Bar commenced action to revoke petitioner's probation imposed in the original proceeding (Bar Misc. No. 5622). As explained above, petitioner was placed on five years' probation in that proceeding subject to various conditions. (P. 121, *ante*.) One condition was that he file periodic written reports with the State Bar during each year of his probation. Another condition was that he promptly confer with a probation monitor to review the probation terms and that he cooperate fully with the monitor. On August 23, 1988, the State Bar issued a notice to show cause why petitioner's probation should not be revoked for failure to comply with these conditions.

The notice stated that petitioner's default would be entered if he failed to file a timely answer.[5] He failed to do so, and the State Bar filed and served a notice of entry of default on November 1, 1988. It informed petitioner that

---

[4] After we granted review, petitioner filed a written waiver of his right to oral argument. The State Bar subsequently also waived oral argument.

[5] The notice stated in capital letters: "YOUR DEFAULT MAY BE ENTERED FOR FAILURE TO FILE A WRITTEN ANSWER TO THIS NOTICE WITHIN TWENTY (20) DAYS AFTER SERVICE AS PRESCRIBED BY RULE 552, RULES OF PROCEDURE OF THE STATE BAR." The notice was served on petitioner on September 7, 1988.

the charges against him were deemed admitted. Pursuant to rule 552.1 of the Rules of Procedure of the State Bar of California, a hearing was held on the notice to show cause on January 10, 1989.[6] The referee filed his decision on February 23, 1989, recommending that petitioner's probation be revoked and that he be placed on involuntary inactive enrollment pursuant to Business and Professions Code section 6007, subdivision (d) and rule 612(b) of the Rules of Procedure.[7]

On July 7, 1989, petitioner applied for relief from his default in Bar Misc. No. 5622. He relied on the same medical and emotional ills alleged in support of his petition for review in this proceeding (Bar Misc. No. 5453). The State Bar Office of Trial Counsel opposed the application on the grounds that it was untimely under rule 555.1(b) of the Rules of Procedure, that it was not accompanied by an answer, and that petitioner failed to show good cause for the late filing. The assistant presiding referee denied the application on July 25, 1989.[8]

On August 11, 1989, the review department by a vote of 14 to 0 adopted the referee's recommendation to revoke petitioner's probation and to place him on involuntary inactive enrollment.[9]

Petitioner then filed a request for the review department to review the decision of the assistant presiding referee denying the application for relief

---

[6] All further references to the Rules of Procedure are to the Rules of Procedure of the State Bar of California.

[7] At the request of the State Bar's Office of Trial Counsel, the referee amended his decision on April 17, 1989, to delete findings on issues not raised by the notice to show cause.

[8] Rule 555.1(b) of the Rules of Procedure provides that an application for relief from default must be filed no later than 75 days after entry of the member's default. The notice of petitioner's default was filed and served November 1, 1988. Thus, his application for relief was due no later than January 17, 1989, but was not filed until almost six months after the due date.

[9] The basis for recommending involuntary inactive status is not clear. Petitioner's actual suspension in Bar Misc. No. 5622 was not scheduled to end until May 6, 1990, and he was on indefinite interim suspension in this proceeding (Bar Misc. No. 5453). Because he was already prohibited from practicing, there was no need to place him on inactive status. Moreover, Business and Professions Code section 6007, subdivision (d) provides that the State Bar may *order* involuntary inactive enrollment. Section 6007 does not provide for a *recommendation* for such status. Why the State Bar chose to *recommend* such status is thus unclear. If we were to adopt the recommendation to revoke probation, there would be no need to place petitioner on inactive status. Conversely, if we rejected the revocation recommendation, logical consistency would require us also to reject the recommendation for inactive status because the two recommendations are based on the same alleged misconduct.

Similarly, section 6007, subdivision (d)(2) provides that involuntary inactive enrollment shall terminate when this court "makes an order regarding the recommended actual suspension in the probation matter . . . ." Our decision on a revocation recommendation, regardless of whether we adopt or reject the recommendation, terminates an inactive enrollment.

For these reasons, we believe the State Bar should consider whether it is appropriate to combine recommendations for involuntary inactive enrollment and probation revocation.

from default. Petitioner contended that, because the referee denied the application before he was designated to rule on it, he did not adequately consider the application for relief.[10] The review department denied the request for the review on the grounds that it was untimely, that petitioner was in default and thus not entitled to appear in the proceeding, and that the review department lacked jurisdiction because it had already reviewed the matter and had made its recommendation to this court.

Petitioner then sought a writ of review from this court in Bar Misc. No. 5622. We denied his petition on December 20, 1989, because it was untimely under rule 952(b) and (c) of the California Rules of Court. We also adopted the review department's recommendation to set aside our prior stay of suspension. The result was that petitioner's actual suspension was increased from two years to five years.[11]

## DISCUSSION

Petitioner contends he was incapable of complying with rule 955 as a result of chronic diarrhea and related ailments lasting several years. He also refers to emotional difficulties in "handling his problem with the State Bar." The relationship between his medical and emotional ailments is not clear, but he seems to argue that diarrhea prevented him from dealing with emotional difficulties caused by his disciplinary problems. He also seems to suggest that the diarrhea itself caused emotional problems. The relationship between his medical and emotional ailments, however, is not significant to our decision. He relies primarily on his emotional problems regardless of how they were caused or exacerbated by his diarrhea. He alleges: "I was unable to take charge of my affairs regarding any and all aspects of the State Bar requirements as I was emotionally crippled." We reject the argument.

---

[10] The record reflects that the assistant presiding referee was not designated to rule on the application until August 9, 1989. It is unclear why his decision was filed before that date. Because we have already denied review in Bar Misc. No. 5622, we need not decide whether the timing of the referee's decision was appropriate, but we do call it to the State Bar's attention to consider whether a referee should decide a matter before being formally designated to do so.

[11] California Rules of Court, rule 952(a) requires that a petition for review of an order recommending revocation of probation be filed within 15 days after written notice of the recommendation is mailed by the State Bar to the petitioner. The review department's recommendation in Bar Misc. No. 5622 was mailed to petitioner on August 14, 1989. Thus, the petition was due no later than August 29, 1989, but it was not filed until November 8, 1989. The review department's decision also recommended that petitioner be placed on involuntary inactive enrollment. Viewed favorably to petitioner, that aspect of the recommendation could be deemed "other action" within the meaning of rule 952(c), which allows 60 days after service in which to petition this court for review. Even under this more generous time limit, however, the petition was untimely. The 60-day period expired on October 13, 1989—more than 3 weeks before the petition was filed.

A. *Untimeliness*

■ Petitioner's defense is untimely by his own admission. One of his primary arguments is that the State Bar referee was unaware of petitioner's emotional and physical problems when the August 1988 hearing was held, and that the State Bar would not have recommended disbarment if the bar had been aware of this evidence. "As we have explained on several recent occasions, this court generally hesitates to rely upon *any* documentary evidence that is extrinsic to the record of the proceedings before the State Bar." (*In re Rivas* (1989) 49 Cal.3d 794, 801 [263 Cal.Rptr. 654, 781 P.2d 946] (italics in original); *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740].) "Such evidence is virtually impossible to evaluate in the absence of cross-examination and, to the extent it consists of opinions about the petitioner's mental attitude, is often based on his own self-serving, out-of-court statements." (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217].)

Petitioner offers two conflicting explanations for his belated reliance on alleged medical and emotional problems. Neither is persuasive. After the review department adopted the referee's disbarment recommendation, petitioner filed an application to present evidence of his medical and emotional ailments. In support of that application, he declared under penalty of perjury that he did not present the evidence (or tell his counsel of it) because he "did not realize until review[ing] the case that in fact this [August 1988] hearing was the proper forum to present such evidence." This assertion is flatly contradicted by petitioner's prior conduct. He had already participated in a disciplinary hearing in March 1987 in Bar Misc. No. 5622 and had presented mitigating evidence. Moreover, in February 1988 he petitioned this court for review of the decision in Bar Misc. No. 5622 and in support of that petition attempted to justify his failure to present additional mitigating evidence to the State Bar. Petitioner's experience with and actions in Bar Misc. No. 5622 demonstrate he was fully familiar with State Bar proceedings by the time of the August 1988 hearing in this matter.

Petitioner's claimed ignorance is even more incredible in light of his conduct in *this* proceeding. At the August 1988 hearing, petitioner testified to emotional difficulties that he had in dealing with his disciplinary problems. For example, he claimed a psychological inability to promptly open mail from the State Bar. Moreover, petitioner was represented by counsel, who did attempt to elicit mitigating testimony. In short, we reject petitioner's claim of ignorance of when to present mitigating evidence.

Aside from being unconvincing, this claim is inconsistent with petitioner's other attempted justification for failing to timely present his medical

and emotional evidence to the State Bar. He contends that, at the time of the August 1988 hearing, he "was unaware of the extent of the emotional and physical problems he was experiencing." Petitioner cannot have it both ways, arguing on the one hand that he was unaware of his problems, but on the other hand that he would have presented evidence of those alleged problems if only he had understood the State Bar hearing procedure.

Petitioner's claim that he was unaware of his condition is contradicted by his prior assertions that he had long been emotionally unable to deal with his disciplinary proceedings. For example, he states in his declaration that "Prior to the August [1988] hearing, I did everything possible to avoid all dealings with the State Bar or my discipline." It is therefore untenable for petitioner to claim that he was unaware of his emotional problems. By his own admission, he was painfully aware of them.

Petitioner's reliance on emotional problems is also inconsistent with his testimony at the August 1988 hearing. As explained above (pp. 121-122, *ante*), his sole defense to the alleged violation of rule 955 was that he thought he had no clients and was not required to act under rule 955. He now argues, however, that his emotional problems precluded him from complying with rule 955. This argument necessarily assumes that, absent these problems, he would have notified his clients. The argument therefore refutes his prior contention that he had no clients. Again, petitioner cannot have it both ways. We do not see how this conflict would have led to a more favorable recommendation by the referee. If anything, the conflict would have raised a reasonable doubt for the referee as to petitioner's credibility.

In short, petitioner's reliance on his alleged emotional and physical problems is untimely. He must therefore be deemed to have waived any argument based on those problems. (*Blair* v. *State Bar* (1989) 49 Cal.3d 762, 774 [263 Cal.Rptr. 641, 781 P.2d 933].) Due to the ultimate nature of the sanction recommended by the State Bar, however, we consider the merits of petitioner's belated claim of emotional incapacity.

B.  *Insufficiency of petitioner's evidence*

■ The greatest problem with the petition for review is an absence of credible evidence to support the claim of emotional incapacity. Petitioner has submitted nothing more than his own declaration and assorted medical bills and insurance documents. This is insufficient under the Standards for Attorney Sanctions for Professional Misconduct. (Rules of Proc. div. V, std. 1.2(e)(iv) (hereafter referred to as the Standards).) Standard 1.2(e)(iv) defines as a mitigating circumstance, "*extreme* emotional difficulties or physical disabilities suffered by the member at the time of the act of

professional misconduct which *expert* testimony establishes was *directly* responsible for the misconduct." (Italics added.) Petitioner fails to meet any of the requirements of Standard 1.2(e)(iv).

First, he does not present any *expert* testimony. He recounts a history of diarrhea and emotional ills and names eight physicians and three hospitals who have allegedly treated him. Conspicuously absent, however, is even a single declaration or report by any of these health care providers that substantiates petitioner's alleged problems. This alone renders insufficient his belated mitigation attempt.

Second, the evidence submitted, such as it is, does not establish that the alleged medical problems were *directly* responsible for his rule 955 violation. Except for his own declaration, petitioner has submitted only a stack of unexplained, unsummarized, and unindexed medical bills and insurance forms. In light of his failure to present expert testimony, as required by Standard 1.2(e)(iv), we are not obligated to search through these documents in an attempt to arrive at a lay interpretation of them. We have nevertheless reviewed them, and we find nothing that establishes any connection, direct or otherwise, between his diarrhea or emotional problems and his violation of rule 955. Indeed, with isolated exceptions, they are nothing more than insurance forms that set forth the amount of benefits paid on petitioner's behalf but provide no meaningful information as to his illness or treatment. It is not even clear from the documents that his treatment occurred during the period relevant to our decision. Pursuant to our May 20, 1987, interim suspension order (as modified on June 17, 1987) petitioner was required to comply with rule 955, subdivisions (a) and (c) within 30 and 40 days, respectively, after the order's effective date of August 17, 1987. Thus, the last compliance date was September 26, 1987. Nothing in the documents shows that petitioner was incapacitated during the period between August 17 and September 26, 1987.

Third, it is far from clear that the alleged emotional disability was *extreme.* Petitioner testified at the August 1988 hearing that, since May 1, 1987, he had been the chief financial officer and a member of the board of directors of a corporation. Petitioner does not explain how he managed to carry out his corporate responsibilities at the same time he was allegedly so crippled emotionally that he could not handle the routine and minimal paperwork under rule 955.

Petitioner's claim of emotional incapacity is further belied by his conduct. To reiterate, the gist of his claim is that his emotional state prevented him from paying attention to his disciplinary proceedings and thus from complying with rule 955. He states, "I could not open letters I received

from the State Bar . . . . I did everything possible to avoid the issues regarding the State Bar. . . . I have been unable to deal with the emotional issues surrounding my license." Petitioner's conduct, however, demonstrates that he paid close attention to the proceedings when doing so might benefit him. His "incapacity" appears to have surfaced only when it worked to his advantage. For example, in response to our May 20, 1987, interim suspension order, he promptly petitioned us to set aside or temporarily stay our order. On June 17, we briefly delayed the effective date of the order. In August, petitioner filed two more applications for a further stay, both of which we denied. This activity is significant because it conflicts with petitioner's claim that he was incapacitated from complying with rule 955 in August and September 1987.

Similarly, petitioner's conduct contradicts his claim that he was emotionally incapacitated during his August 1988 hearing of the rule 955 violation. After our November 1987 referral to the State Bar for a hearing of petitioner's noncompliance with rule 955, he filed in February 1988 a declaration attempting to justify his failure to comply. In April 1988, he applied to this court for relief from his default in Bar Misc. No. 5622. These acts by petitioner demonstrate that he was not incapacitated in 1988 from dealing with State Bar matters. Likewise, the transcript of the August 1988 hearing reflects that petitioner, who was represented by counsel, participated fully in that hearing. Moreover, only two weeks after the referee filed his decision, petitioner filed an application for hearing de novo. It is simply not tenable for petitioner to contend he was emotionally incapacitated at the hearing on August 16, only three weeks before filing that application.

There is no credible evidence before us that meets the requirements of Standard 1.2(e)(iv) or that even tends to support petitioner's claim of emotional paralysis.

C. *Allegation of no clients*

■ Although petitioner now relies on his alleged emotional problems to excuse his violation of rule 955, he argued at the State Bar hearing that he had no clients to inform of his suspension by this court and therefore had believed that compliance with rule 955 was unnecessary. It is not clear whether petitioner still relies on this argument. If he does, we reject it as being both factually and legally incorrect.

The referee heard testimony of two persons whom he concluded were clients of petitioner at the time of his suspension. "We give great weight to the findings of a referee, particularly as to the credibility of witnesses." (*Blair* v. *State Bar, supra,* 49 Cal.3d 762, 775.) Moreover, our independent

review of the hearing transcript convinces us that the referee's determination was correct. Petitioner had at least two clients as of the effective date of his interim suspension.

Petitioner's prior representations to this court also cast doubt on his contention that he had no clients. For example, on August 7, 1987, he requested a second stay of the effective date of his interim suspension, which was then scheduled to take effect on August 17. He alleged that he had a case scheduled to begin trial on September 14 and that he was active in several pro bono cases that were set for trial in September. Based on these allegations, he requested a stay of an additional 40 days. (We denied the request.) He testified a year later at the August 1988 hearing that he had no clients as of August 17, 1987—the effective date of our interim suspension order.[12] It is curious that as of August 7, 1987, he was asking for more time to serve his clients, but a year later was testifying that he had no clients after August 17, 1987.

We need not belabor the facts further because, even if petitioner is correct that he had no clients, he was nevertheless required to comply with rule 955. We have recently rejected the same contention made by petitioner. "[E]ven though there were no clients or counsel to notify pursuant to subdivision (a) of rule 955, Powers [the attorney] was still required to file an affidavit with us pursuant to subdivision (c). Any belief Powers may have had about the inapplicability of rule 955 was clearly unreasonable even if in good faith." (*Powers* v. *State Bar* (1988) 44 Cal.3d 337, 341 [243 Cal.Rptr. 386, 748 P.2d 324]; see *Durbin* v. *State Bar* (1979) 23 Cal.3d 461 [152 Cal.Rptr. 749, 590 P.2d 876].) Petitioner attempts to distinguish *Powers* on the ground that the attorney in that proceeding had an extensive prior disciplinary record. Petitioner, however, ignores his own prior record, which involved serious misconduct that resulted in a period of actual suspension longer than that which had previously been imposed on the attorney in *Powers* before his disbarment. Moreover, the attempted distinction, even if valid, would go to the issue of the appropriate discipline, not to the issue of whether petitioner violated rule 955.

There is sufficient evidence to support the State Bar's conclusion that petitioner willfully violated rule 955 in two respects: (1) He failed to notify

---

[12]Petitioner testified as follows:

"Question: So the Supreme Court granted the stay [to August 17, 1987]. And of those [pending] trials, what happened with those cases?

"Answer: All of them except one were tried, and the cases were completed.

"Question: And were those cases completed prior to August 17th?

"Answer: Oh, yes."

his clients under rule 955(a) of his suspension by this court. (2) He failed to file the required declaration with this court under rule 955(c).[13]

### D. *The appropriate discipline*

■ Rule 955(e) provides that "A suspended attorney's wilful failure to comply with the provisions of this rule constitutes a cause for his disbarment or suspension and for revocation of any probation then pending." By a vote of 15 to 0 the review department adopted the referee's recommendation of disbarment. ■ We generally accord great weight to the review department's recommendation. (*In re Rivas, supra*, 49 Cal.3d 794, 800.) There is no reason in this case to depart from that practice.

Petitioner relies on *Durbin* v. *State Bar, supra*, 23 Cal.3d 461, for the proposition that a violation of rule 955 does not warrant disbarment. We disagree. In that case, the attorney, like petitioner, was serving an actual suspension of two years when he violated rule 955 by failing to file the required affidavit with this court. (Our opinion does not state the reason for the original suspension.) The State Bar recommended an additional suspension of one year, which we reduced to a period of six months or until the attorney filed the affidavit, whichever period was longer. The nominal discipline imposed in *Durbin* does not mandate a similar result in this case. The State Bar found the attorney had complied with rule 955(a) because he had timely advised his clients of his suspension. The only violation was the failure to file the affidavit required under rule 955(c). In this case, the referee rejected petitioner's claim that he had no clients to notify and found that he had violated both subdivisions (a) *and* (c) of rule 955.

*Durbin* is inapposite in two other respects. First, it was decided six years before the Standards were adopted by the State Bar. ■ We believe the more recent decisions by this court reflect the view that disbarment is generally the appropriate sanction for a willful violation of rule 955. (*Powers* v. *State Bar, supra*, 44 Cal.3d 337, 342; *Lydon* v. *State Bar, supra*, 45 Cal.3d 1181.) The introduction to the Standards states that one of the primary reasons for their adoption was "to achieve greater consistency in disciplinary sanctions for similar offenses." We see no reason to depart from what appears to be the most consistently imposed sanction in recent cases under rule 955.

---

[13] On February 26, 1988, petitioner filed with us a declaration in which he attempted to justify his failure to comply with rule 955. This declaration, however, was not proof of compliance with rule 955(a), as required by rule 955(c). Moreover, even if the declaration were attempted compliance, it was untimely by several months under the terms of our May 20, 1987, order as modified on June 17, 1987.

Second, our opinion in *Durbin* does not reflect any factors weighing in favor of disbarment. By contrast, petitioner's conduct throughout these disciplinary proceedings raises a serious question as to his ability and fitness to practice law. As our recitation of the facts demonstrates (pp. 119-125, *ante*), petitioner has consistently been untimely in the State Bar proceedings. For example, he failed to timely seek review of the disciplinary recommendations in Bar Misc. No. 5622, and we denied his application for relief from default. He subsequently violated the terms of his probation in that proceeding. When the State Bar issued a notice to show cause, he failed to respond, and his default was entered. He then sought review by this court, but his petition was untimely and we denied it. In this proceeding (Bar Misc. No. 5453), his purported attempt to comply with rule 955—the February 1988 declaration filed in this court—was untimely. He also failed to timely present evidence to the State Bar at the hearing of the rule 955 matter and subsequently sought leave to present additional evidence. When his application was denied, he objected in this court to the State Bar decision but conceded that he was again untimely. (We generously treated his untimely objections as a timely petition for review.)

Petitioner attributes his shortcomings in these proceedings to his alleged emotional difficulties in dealing with his disciplinary problems. As we have explained above, petitioner fails to present any credible evidence of his alleged medical and emotional problems. More important, however, if the problems are as severe as petitioner claims, the only logical conclusion is that he is incapable of practicing law. He asserts that, "I am now seeking help with my emotional problem. My Doctor [*sic*] who is handling my emotional problem is Bernard Rappaport, MD [*sic*], of Berkeley, California." Petitioner, fails, however, to provide any details of his alleged problems, his diagnosis and current status, or even his doctor's area of specialty. In short, if we accept petitioner's claim of emotional paralysis, we must ask whether he can now practice law in accordance with the standards of professional conduct. He provides no evidence that he is able to do so.

We recently rejected an attorney's claim of emotional difficulties and ordered him disbarred. In doing so, we rejected his vague and poorly supported claim of emotional difficulties. (*Lydon* v. *State Bar, supra*, 45 Cal.3d 1181, 1187-1188.) The attorney claimed that he was suffering from agoraphobia and submitted two letters purportedly prepared by doctors. We noted, among other things, the absence of any evidence that would assuage our concern that his professional neglect could recur in the future. (*Id.*, at p. 1188.) Likewise here, there is nothing before this court that even suggests petitioner can competently serve the public despite his alleged emotional problems.

We conclude that petitioner must be disbarred to protect the public. A mere suspension would terminate pursuant to its own terms, and petitioner could resume law practice with no showing of professional competence or moral fitness. If he is disbarred, however, he will be required to apply for reinstatement and establish: "(1) rehabilitation and present moral qualifications for readmission, and (2) present ability and learning in the general law." (Rules of Proc., rule 667.) The public is best protected by our disbarring petitioner and thereby requiring this showing before he can resume practice.[14]

## CONCLUSION

It is ordered that petitioner Clifford Dale Bercovich be disbarred and that his name be stricken from the roll of attorneys in this state. This order is effective upon finality of this decision in this court. (Cal. Rules of Court, rule 24(a).)

---

[14] Petitioner also makes various minor objections to the referee's findings and conclusions in this proceeding. (See objections filed on Apr. 21, 1989, and supplement to objections filed on May 2, 1989.) We find no merit to the objections, but even if they were well taken, they would not be relevant to our decision as to the appropriate discipline.