[No. S015829. July 15, 1991.]

JAY P. COLANGELO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Tom Low for Petitioner.

Diane C. Yu, Richard J. Zanassi and Gregory B. Sloan for Respondent.

OPINION

THE COURT.—We review the recommendation of the Hearing Department of the State Bar Court that petitioner, Jay P. Colangelo (petitioner), be suspended from the practice of law for one year upon certain conditions and that the suspension be stayed, with probation of eighteen months but no period of actual suspension. Petitioner requests that we either review the decision of the State Bar Court or that we remand this matter to the State Bar Court for further proceedings. We conclude that petitioner is not entitled to further proceedings and adopt the disciplinary sanctions recommended by the hearing department.

## I. PROCEDURAL HISTORY AND FACTS

Petitioner was admitted to the practice of law in California in 1981. The record indicates no prior discipline. On May 10, 1989, a "Notice to Show Cause" was filed with the State Bar Court, alleging that petitioner had committed various disciplinary violations. The notice was properly served upon petitioner on May 12, 1989, by certified mail, and required that petitioner respond to the notice within 20 days of the service of the notice. (Rule 552, Transitional Rules Proc. of State Bar of Cal.) On June 5, 1989, a "Notice of Time and Place of Mandatory Settlement Conference" was filed at the State Bar Court and was served upon petitioner. This notice advised petitioner that a settlement conference had been scheduled for August 28, 1989. In the absence of petitioner's response to the first notice, the State Bar filed a "Notice of Application to Enter Default" on June 13, 1989, which advised petitioner that the State Bar would seek his default unless he filed an answer to the notice to show cause by July 3, 1989. On July 6, 1989, a "Notice of Entry of Default" was filed with the State Bar Court and served upon petitioner.

The next day, July 7, 1989, the State Bar received an "Answer to the Notice to Show Cause" from petitioner. The State Bar Court did not file this document because a default had already been entered and petitioner had not complied with the procedural requirements to set aside his default. The answer was returned to petitioner with reference to the default procedures and the Rules of Procedure of the State Bar. The default hearing was held on September 5, 1989 (Goldhammer, hg. judge), but petitioner did not appear, either in person or through counsel. At the hearing evidence was presented in the following matters:

### The Hubbard Matter

In April 1986, Monica Hubbard hired petitioner, through Drivers' Defense Clinic (Drivers), to represent her after she was charged with driving

under the influence of alcohol. Petitioner received a $175 advance payable to Drivers, for which he negotiated a guilty plea entered in absentia in May 1986. Despite repeated requests from Hubbard, petitioner never sent Hubbard the "paperwork" from the plea bargain, including information on the sheriff's work program that Hubbard was required to attend.

Hubbard was arrested on December 2, 1986, for failure to appear in the sheriff's work program. Petitioner obtained Hubbard's release the following day. He did not charge her for these additional services. Hubbard continued to call petitioner for two months on a daily basis, seeking the "paperwork" from the plea bargain. She never received the copies of the court orders from petitioner, but eventually served her sentence and enrolled in a sheriff's work program on her own.

Hubbard did not testify at the default hearing on September 5, 1989; instead, the State Bar Court relied upon her declaration and associated exhibits. The hearing judge expressed confusion as to exactly what constituted the "paperwork" that Hubbard sought, and questioned whether petitioner had a duty to Hubbard after she entered her plea in December. In his "tentative view as to culpability," the hearing judge found only that the State Bar had "established that [petitioner] did not provide [Hubbard] the paperwork, he should have done so, but [the judge believed] that [the disciplinary violation was] pretty much limited to that." The hearing judge found petitioner's failure to send the documents to Hubbard constituted a failure to communicate. He ultimately found that the State Bar had not established that petitioner failed to refund an advanced fee by clear and convincing evidence.

### The Fields Matter

In June 1986, Jerry Fields paid petitioner $500 to file a criminal appeal on behalf of his father, who was out of custody on bail. Petitioner told Fields at that time that he would postpone filing until the last minute to extend the elder Fields's time out of custody. Petitioner occasionally returned Fields's calls, assuring Fields that all documents were being timely filed.

By letter dated October 24, 1986, petitioner was notified by the court that the opening brief in *People* v. *Fields* was overdue and that the appeal would be dismissed if the brief was not received by the court within 30 days. Petitioner requested and received an extension of time to file the opening brief until December 2, 1986. He never filed the brief, however. In February 1987, Fields's father received notice that he was to appear in court regarding a remittitur that had been issued. Petitioner advised Fields that his

father did not need to appear and that petitioner would arrange for the remittitur to be recalled.

In April 1987, Fields's father voluntarily appeared in court, where his nonappearance was excused and his bail was exonerated. He was remanded to prison because his appeal had been dismissed. He served his sentence and was released in February 1988.

The hearing judge, after reviewing Fields's declaration, tentatively found that the State Bar had "borne out the charges [filed with respect to this matter], . . ." In his decision, however, the judge was unable to conclude that Fields had suffered prejudice as a result of petitioner's misconduct, observing that petitioner was "not primarily responsible for the client being jailed."

### The Bilson Matter

In September 1987, Stephen Bilson gave petitioner a $250 advance fee to represent Bilson in a civil suit. Petitioner filed a timely answer on behalf of Bilson on October 2, 1987. Thereafter, Bilson could not get petitioner to respond to his repeated phone calls or to a letter sent to petitioner by certified mail. Bilson finally contacted petitioner in January 1988, a month before the trial date, and requested that petitioner request a continuance of the trial so that Bilson could hire new counsel. Petitioner appeared at trial and did not withdraw as Bilson's attorney; Bilson did not appear. A judgment of $22,223.50 was entered against Bilson, who is now contesting that judgment.

Bilson did not appear at the default hearing but his declaration was introduced. The hearing judge in his tentative ruling noted that he was unable to infer, from Bilson's declaration, whether petitioner failed to request a continuance at trial for substitution of counsel, or whether petitioner in fact made such a motion which was denied. However, the hearing judge did find petitioner culpable of certain other disciplinary violations for this incident in his October 6, 1989, order.

### The Rhodes Matter

In August 1985, Kendell Rhodes's attorney in Alaska arranged for petitioner to represent Rhodes by taking depositions in California to be used in his pending criminal case in Alaska. Petitioner was paid an advance fee of $500 in connection with this agreement. Rhodes, who could not get a response from petitioner, was later informed by his attorney in Alaska that the depositions in California were scheduled for November 26, 1985.

Petitioner did not appear at the deposition. Though the court reporter told Rhodes that petitioner was sick, Rhodes called petitioner's office and was told that petitioner was out of the office on another matter. After making several unsuccessful attempts to reach petitioner by telephone, Rhodes terminated his relationship with petitioner in January 1986 and demanded that his fee of $500 be returned. Petitioner did not respond. Rhodes won a small claims judgment of $509 against petitioner in June 1986. Petitioner had not paid Rhodes as of the date of the hearing of the State Bar Court.

The hearing judge considered Rhodes's declaration and tentatively determined that the charges were "pretty straightforward and borne out."

### State Bar Court Findings

On the basis of the evidence presented at the default hearing, the hearing judge determined that petitioner had violated: former rule 2-111(A)(2) of the Rules of Professional Conduct (withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his clients in the Hubbard, Fields, and Bilson matters); former rule 2-111(A)(3) of the Rules of Professional Conduct (withdrawing from employment without promptly refunding an unearned advance fee in the Fields, Bilson, and Rhodes matters); former rule 6-101(A)(2) of the Rules of Professional Conduct (intentionally or with reckless disregard failing to perform legal services competently in all of the above matters); former rule 6-101(B)(1) of the Rules of Professional Conduct (accepting employment when he knew that he did not have, or would not have, or would not acquire before performance was required, sufficient time, resources and ability to perform this matter with competence in the Hubbard and Fields matters); and Business and Professions Code section 6068, subdivision (m) (failing to keep his clients reasonably informed of significant developments in all of the above matters). As a result of these violations, the hearing judge found that petitioner violated Business and Professions Code section 6068, subdivision (a) (willfully failing to support the laws of this state), and that standards 2.4(b) and 2.6 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) and Business and Professions Code section 6103 should be applied. The hearing judge recommended that petitioner be suspended from the practice of law for one year, and that the suspension be stayed upon certain conditions including probation for eighteen months.

The hearing judge's decision was filed on October 6, 1989. Petitioner was sent a copy of the decision and notice of his right to move to have the default vacated pursuant to former State Bar Rules of Procedure, rule

555.1.[1] Petitioner did not respond to this mailing. In May 1990, the State Bar Court forwarded the findings and recommendations of the hearing department to this court. Petitioner filed a timely petition for review on July 30, 1990,[2] which was granted August 29, 1990.

### Petition for Review and Assertions Contained Therein

Petitioner contends that a physical ailment prevented him both from attending the hearing of the State Bar Court and from filing a motion seeking relief within the statutory period for filing such motions. He asks this court to grant him relief from his default and to remand the matter to the State Bar Court for another opportunity to present evidence on the merits. He claims to have first become aware of the default in January 1990, long after the 75-day period for setting aside the default. His declaration states that he contacted the State Bar at that time and made full restitution to Rhodes. According to petitioner, the State Bar advised petitioner on May 30, 1990, that it was too late to obtain relief from default in the State Bar Court and advised him that the State Bar Court would be filing its recommendation with the Supreme Court soon. After the State Bar Court filed its recommendation with this court, petitioner filed a timely petition for review.

In support of his request to be granted a belated relief from default, petitioner documents that he suffers from "temporal lobe epilepsy." Petitioner's history with this ailment stems from an injury to his head in 1971. He had a generalized seizure in 1984, for which he was treated with various drugs. The drugs had adverse side effects upon petitioner, and he discontinued their use in 1986 or 1987. During this time, petitioner believed that he was suffering from depression and was aware of some memory loss, for which he received counseling through 1988. Apparently petitioner then sought no further aid until December 1989, when he turned to a new doctor for medical treatment. Petitioner found this treatment ineffective and sought out another medical team in March 1990. For the first time, petitioner's temporal lobe epilepsy was diagnosed and effectively treated.

Petitioner argues that his illness "created a 'false memory' which prevented him from defending himself insofar as he falsely believed that he had provided the State Bar with exculpatory evidence when in fact he had not." He further attributes to the illness his failure to respond to the hearing

[1] Former State Bar Rules of Procedure, rule 555.1, in effect at the time of petitioner's default, was subsequently reenacted without change on September 1, 1989, under the Transitional Rules of Procedure of the State Bar.

[2] In his petition for review petitioner submits letters from his treating physicians, his supervisor at the office of the State Public Defender, two letters from the State Bar dated March 30, 1990, and May 30, 1990, and his own declaration.

judge's filed decision of October 6, 1989. Petitioner thus points out that his failure to file a request for review of the decision by November 6, 1989, was during "a time when [petitioner] was not properly diagnosed for his illness." Petitioner does not argue that his illness was the underlying cause of the violations alleged by the State Bar;[3] instead, he argues that his disability prevented him from defending himself in the State Bar proceedings.

Petitioner submitted a letter dated May 11, 1990, in which his physician explains petitioner's treatment with Tegretol, "the drug of choice for seizure control and limbic epilepsy." The doctor "anticipated that [petitioner] will be stabilized on Tegretol and require this medication for life if it does control his symptoms. [She did] not anticipate any worsening of his symptoms or the development of an actual psychiatric illness at this point in his life." Petitioner, in his declaration in his petition for review, asserts that since receiving the Tegretol treatment, "[he had] not experienced any additional lapses of consciousness or memory problems."

## II. DISCUSSION

### A. Remand to State Bar Court

■ Petitioner requests that we grant him relief from default and remand the matter to the State Bar Court for a new hearing on the merits.
■ We are generally unsympathetic to attorneys' claims for relief from default in the State Bar Court. "[A]n accused attorney has the obligation to obtain representation if he wants it, to appear at the hearing, and to present evidence. The hearing may proceed despite his voluntary absence, and his failure to participate is not grounds for a rehearing to present additional evidence. [Citations.]" (*Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 597 [247 Cal.Rptr. 599, 754 P.2d 1096].) Petitioner did not appear. Further, after the default was entered, petitioner was sent notice of the default and was advised that he had 75 days after the entry of default to file a motion seeking relief. (See former Rules Proc. of State Bar, rule 555.1(b).) He did not file such a motion. Instead, petitioner now seeks relief from his default more than 75 days after the entry of default.

■ The State Bar argues that petitioner's explanation for his failure to respond to the State Bar's charges is implausible, and that his motion to remand his case to the State Bar Court should be denied on this basis.[4] The

---

[3] In his petition, petitioner offers a defense to each of the counts. As we discuss below (see *post*, pp. 1265-1266), we do not consider this "evidence" petitioner presents in arriving at our conclusion.

[4] The State Bar, in its brief, implicitly recognizes that this court has the authority to remand this case to the State Bar Court for further findings, though remand is not specifically

State Bar presents two particular indicia that petitioner did know, or should have known, of the nature and outcome of the charges the State Bar filed against him. First, during the period from May 10, 1989, to October 6, 1989, petitioner received multiple notices of the State Bar proceedings to which he responded, in one instance, on July 7, 1989. The State Bar thus points out that petitioner knew of the proceedings at one point, and argues that this knowledge in itself "clearly establishes his awareness that disciplinary proceedings had not been terminated."

Second, the State Bar notes that the letter that petitioner has submitted from his supervisor at the State Public Defender's office indicates that from the first day of his employment as a deputy state public defender on December 18, 1989, through the diagnosis of his illness in March 1990, petitioner had completed his case assignments (according to a letter from the chief assistant state public defender) as a deputy state public defender in a "capable, diligent manner." Indeed, the chief assistant state public defender noted that he had "seen no evidence of aberrant behavior" in petitioner. The State Bar argues that it is curious that evidence of petitioner's illness was entirely absent among the persons with whom petitioner worked, in spite of the fact that for much of this time his temporal lobe epilepsy was undiagnosed and while, presumably, petitioner continued to suffer from symptoms such as false memory.

We agree with the State Bar that petitioner's claim that temporal lobe epilepsy precluded him from responding in the State Bar proceedings is implausible. Though his doctor attests that petitioner suffers from temporal lobe epilepsy, the doctor does not suggest that this ailment would account for petitioner's failure to respond to the charges filed against petitioner by the State Bar; indeed, after describing false memory as a symptom of temporal lobe epilepsy, petitioner notes that the false memories are not permanent but generally recede "after a few days." Yet petitioner implies that this particular memory, that the State Bar charges had been dismissed, *never* receded even in the face of notices to the contrary.

We find other facts which undermine petitioner's claim regarding the effect his disability had on his ability to respond to the State Bar proceedings. As the State Bar notes, the fact that petitioner practiced competently as a deputy state public defender for three and a half months before receiving effective treatment for his epilepsy suggests that petitioner was capable of assimilating and acting upon pertinent information. We see no reason to distinguish his clients' cases from petitioner's own case. Finally, petitioner

anticipated by the State Bar's Transitional Rules of Procedure. (See Transitional Rules Proc. of State Bar, rule 555.1.)

was aware of recurring problems caused by symptoms of temporal lobe epilepsy[5] at the time of the State Bar proceedings. This awareness establishes, at the very least, petitioner's inexcusable neglect in not providing some mechanism to prevent exactly this situation from arising (e.g., by retaining counsel to represent him or by alerting a secretary or other such person to monitor the progress of the proceeding). (See former Rules Proc. of State Bar, rule 555.1(a); Code Civ. Proc., § 473.)

For all of the above reasons, we do not find that remand of petitioner's case to the State Bar Court is warranted. Accordingly, this request is denied.

## B. *Review on the Merits*

■ Our principal concerns in State Bar disciplinary proceedings are always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standards for attorneys. (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215 [270 Cal.Rptr. 315, 791 P.2d 994].) Though we exercise our independent judgment in determining the discipline to be imposed on an attorney for disciplinary violations (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]), we accord the findings and recommendations of the State Bar great weight in determining the appropriate disciplinary sanctions. (*In re Basinger* (1988) 45 Cal.3d 1348, 1358 [249 Cal.Rptr. 110, 756 P.2d 833].)

Petitioner submits his declaration, which asserts that his clients' grievances were the result of their own actions—not petitioner's conduct. ■ We have repeatedly asserted our reluctance to consider evidence that has not been presented in State Bar proceedings. " '[T]his court hesitates to rely upon *any* documentary evidence that is extrinsic to the record of the proceedings before the State Bar.' [Citations.] 'Such evidence is virtually impossible to evaluate in the absence of cross-examination . . . .' " (*Bercovich* v. *State Bar* (1990) 50 Cal.3d 116, 126 [266 Cal.Rptr. 341, 785 P.2d 889], italics in original; see also *Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740].) In the absence of cross-examination, we are unable to evaluate petitioner's "own, self-serving, out-of-court statements." (*Lydon* v. *State Bar, supra,* 45 Cal.3d at p. 1187.)

---

[5] Petitioner's brief states that these false memories occurred on several occasions and that he was aware of these symptoms of his ailment: "[Petitioner] has in his memory acts and deeds complete with conversations with various parties, phone calls, and even descriptions of certain persons and, he is convinced that these memories are real. It is only after a few days that he realizes that none of his 'memories' are in fact real."

Accordingly, we decline petitioner's invitation to consider his declaration as it relates to the substantive State Bar charges and limit our review to the facts described in the record.

 In this case, the State Bar recommends that we discipline petitioner for: withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his clients in the Hubbard, Fields, and Bilson matters; willfully failing to perform services in a competent manner in the Hubbard, Bilson, and Rhodes matters; willfully failing to respond to a client's status inquiries or keep his client reasonably informed of significant developments in the Hubbard, Fields, Bilson, and Rhodes matters; and withdrawing from employment without promptly refunding an unearned advanced fee in the Fields, Bilson, and Rhodes matters.

It is beyond question that petitioner's alleged acts of misconduct warrant discipline: "We have considered abandonment of clients and retention of unearned fees as serious misconduct warranting periods of actual suspension . . . ." (*Matthew* v. *State Bar* (1989) 49 Cal.3d 784, 791 [263 Cal.Rptr. 660, 781 P.2d 952].) A summary review of cases involving client abandonment and retention of unearned fees supports this assertion. In *Lester* v. *State Bar* (1976) 17 Cal.3d 547 [131 Cal.Rptr. 225, 551 P.2d 841], four instances in which the attorney retained unearned fees resulted in the attorney's six-month actual suspension from practice. In *Smith* v. *State Bar* (1985) 38 Cal.3d 525 [213 Cal.Rptr. 236, 698 P.2d 139], an attorney was found to have abandoned one client (resulting in the issuance of a contempt order against the client) and retained the unearned fees of another; for his misconduct, we imposed thirty days' actual suspension. In *Stuart* v. *State Bar* (1985) 40 Cal.3d 838 [221 Cal.Rptr. 557, 710 P.2d 357], an attorney who had been privately reproved in a different matter eight years before was actually suspended for thirty days for one instance of client abandonment (resulting in the dismissal of that client's case).

In light of this precedent, the discipline recommended by the State Bar may appear lenient.[6] We note, however, the hearing judge's obvious concern about the adequacy of the case presented by the State Bar in petitioner's absence. In the Hubbard matter the hearing judge found the State Bar's assertions about petitioner's misconduct insufficiently supported by evidence and was therefore unable to conclude that petitioner had refused to refund advanced fees or had abandoned his client. In the Fields matter there was no finding of prejudice to the client, and the decision notes that "Fields might well have been jailed earlier than he would likely otherwise have

---

[6] We note that even in its briefs before this court, the State Bar argues that the discipline recommended for petitioner is "clearly not excessive," but does not advocate more serious discipline (e.g., actual suspension) based on the facts adduced by the hearing department.

been" but for petitioner's actions on Fields's behalf. In the Bilson matter the hearing judge was skeptical that petitioner went to the trouble of showing up at Bilson's hearing and then did absolutely nothing, as the State Bar suggests.[7] Only in the Rhodes matter did the hearing judge not articulate serious misgivings about the adequacy of the evidence presented against petitioner.

While the ultimate responsibility for imposing disciplinary sanctions upon attorneys falls to this court, we have repeatedly emphasized our reliance on factual findings made by hearing judges. "We generally give more weight to the factual findings of the hearing panel since it has a better opportunity to observe the testimony of various witnesses." (*In re Young* (1989) 49 Cal.3d 257, 264-265 [261 Cal.Rptr. 59, 776 P.2d 1021]; see also *Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1149 [270 Cal.Rptr. 12, 791 P.2d 598]; *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) In this instance, the hearing judge's recommendation followed his finding that the State Bar had failed to establish several of the acts of misconduct that it alleged petitioner had committed. In no case was significant prejudice to a client established; it is clear from the record that— with the exception of Kendell Rhodes—the clients' "unreturned" fees were nominal. In sum, we find that on the facts that we have adopted, the hearing judge's recommendations state appropriate disciplinary sanctions for petitioner's misconduct.

"The object of disciplinary proceedings is to protect the public and the courts, and to preserve confidence in the legal profession." (*Young* v. *State Bar*, *supra*, 50 Cal.3d at p. 1215.) We find this objective sufficiently served by imposition of the discipline recommended by the hearing department. Further, in light of his treatment with the appropriate medication and the assurances of his employer that his clients will be protected in the event of a relapse,[8] we see no need to impose additional disciplinary sanctions as a prophylactic measure.

## III. DISPOSITION

We adopt the findings and recommendations of the Hearing Department of the State Bar Court in its decision filed on October 6, 1989. It is hereby

---

[7] In oral argument before this court, petitioner claimed that he had, in fact, appeared at trial to request a continuance so that Bilson could obtain alternate representation. The motion was denied by the court. Though we do not consider this extrinsic evidence, but rather adopt the hearing judge's findings, it is clear from the record that the hearing judge considered that petitioner may have moved for the continuance, and that the hearing judge found that the charge that petitioner had disregarded his client's instructions was therefore unproven.

[8] In oral argument, petitioner pointed out that his current employment with the State Public Defender is well suited to a person with his ailment: the team system in effect at present assures that one to two colleagues will always be aware of the status of petitioner's cases and, accordingly, clients will be protected even if a relapse does occur.

ordered that petitioner Jay P. Colangelo be suspended from the practice of law for one year, and that execution of the order be stayed and petitioner be placed on probation for a period of eighteen months subject to the conditions recommended by the hearing department in the decision filed on October 6, 1989.[9]

We further order that petitioner take and pass the Professional Responsibility Examination within one year from the effective date of this order; and that he offer evidence satisfactory to the State Bar that his temporal lobe epilepsy does not and will not affect his fitness as an attorney, or that he has taken measures adequate to protect his clients should memory loss and associated symptoms impair his ability to function as an attorney.

This order shall be effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

**BAXTER, J., Concurring and Dissenting.**—I agree that petitioner has demonstrated no excuse for his failure to pursue timely remedies before the State Bar Court. Petitioner's "false memories" theory is inherently implausible. Thus, as the majority conclude, no remand to the State Bar Court is justified, and this court should not consider petitioner's exculpatory evidence for any reason.

I respectfully dissent, however, from much of the remaining analysis, and from the discipline imposed. An independent assessment of the evidence demonstrates a serious pattern of prejudicial misconduct warranting actual suspension.

The majority suggest that the hearing judge's recommendation of leniency stemmed from his belief that several of the charges had not been established by the declaratory evidence. However, the hearing judge ultimately found multiple counts of abandonment (Hubbard, Fields, and Bilson), overcommitment (Hubbard and Fields), retention of unearned fees (Fields, Bilson, and Rhodes), incompetence (all four matters), and failure to communicate (all four matters). Except in the Bilson case, the undisputed evidence supporting each of these findings was clear and convincing, and they should be upheld.[1]

---

[9] Condition No. 1 of the hearing department's decision involved restitution in the Rhodes matter. Petitioner made this restitution. (See *ante*, at p. 1262.) Accordingly, condition 1 of the recommendation is hereby excluded from this order.

[1] As to Bilson, the finding of failure to communicate seems amply supported, but Bilson's declaration does not prove petitioner abandoned him, failed to return unearned fees, or provided incompetent service. As the hearing judge noted, there is no competent evidence that petitioner ignored Bilson's instruction to withdraw and seek a continuance, or that petitioner culpably failed to prepare and present a competent defense in Bilson's case. Bilson's

The majority also stress the hearing judge's impression that petitioner's misconduct caused no substantial harm to his clients. However, the hearing judge's opinion on that subject deserves no special deference.

"The State Bar Court's findings . . . are not binding on this court. [Citation.] We generally give more weight to the factual findings of the hearing [judge] since [he or she] has a better opportunity to observe the testimony of various witnesses. [Citation.] However, we must independently examine the evidence and determine its sufficiency in State Bar disciplinary matters. [Citation.] . . ." (*In re Young* (1989) 49 Cal.3d 257, 264-265 [261 Cal.Rptr. 59, 776 P.2d 1021].)

Our duty of independent review obliges us to draw our own inferences from undisputed facts, and to reach our own conclusions of law. If this process exposes flaws in the premises upon which the State Bar Court rested its disciplinary recommendation, the recommendation itself must be discounted accordingly.

Contrary to the hearing judge's suggestion, the undisputed evidence shows that petitioner's misconduct caused substantial harm to clients Hubbard, Fields, and Rhodes as a matter of law. As the hearing judge conceded, Ms. Hubbard's arrest and temporary incarceration occurred at least in part because petitioner "wilfully" ignored her requests for guidance about fulfilling the plea bargain she had retained him to negotiate.[2] In the Fields matter, petitioner's inaction caused the plain loss of criminal appeal rights, a serious matter.[3] Petitioner's persistent failure to return unearned fees in the Rhodes matter forced the client to resort to legal remedies for collection. Indeed, petitioner steadfastly refused to honor the judgment obtained, even after the client contacted the State Bar.

---

voluntary absence at the time the trial was scheduled does not demonstrate petitioner's misconduct.

[2] The majority declares that the hearing judge "was unable to conclude that petitioner . . . had abandoned [Hubbard]" within the meaning of the Rules of Professional Conduct. (Maj. opn., *ante*, at p. 1266.) On the contrary, after some twisting and turning about the extent of petitioner's "contractual" obligation, the hearing judge nonetheless found that petitioner's failure "to properly advise . . . Hubbard as to how to enroll in the [sheriff's work] program and . . . to provide her with copies of the material papers despite multiple requests" clearly and convincingly established that petitioner "wilfully violated former Rule . . . 2-111(A)(2) [of the Rules of Professional Conduct] by withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client." Even if the hearing judge had failed to make this finding, however, we would not be precluded from doing so on the undisputed evidence.

[3] The hearing judge suggested that there was no evidence that the appeal would have been meritorious. He also speculated that appellant Fields might not have remained free on appellate bond as long as he did if petitioner had not engaged in tactics to slow down the appeal. This "no-prejudice" reasoning is flawed in two respects. First, when counsel's delay results in the loss of his client's *right* to appeal, the misconduct cannot be deemed harmless on grounds the appeal might not have succeeded. Second, it seems likely that appellant Fields would have remained free longer had the appeal been considered rather than prematurely dismissed.

As the majority acknowledge, actual suspension is a traditional discipline for multiple acts of abandonment and failure to return fees, where harm to clients is involved. (See maj. opn., *ante*, at p. 1266, and cases there cited.) The State Bar's sanctions for professional misconduct suggest disbarment for a pattern of abandonment, and that suspension is appropriate for individual instances of abandonment or failure to communicate with resulting harm. (See Transitional Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.4(a), (b).) In my view, petitioner's delay in honoring the Rhodes judgment is an aggravating circumstance warranting enhanced discipline. (*Id.*, std. 1.6(b)(i).)

I conclude that our duty to protect the public and the courts can only be fulfilled by requiring a period of actual suspension. I would order petitioner's suspension from the practice of law for two years, and that he be actually suspended for sixty days as a condition of probation.

Lucas, C. J., concurred.